399 F.2d 289
 In the Matter of a Certain Demand for Arbitration by HYLTE BRUKS AKTIEBOLAG and Nymolla, AB,
v.
The BABCOCK & WILCOX COMPANY.
NYMOLLA, AB, Plaintiff-Appellant,
v.
The BABCOCK & WILCOX COMPANY, Defendant-Appellee.
 No. 488.
 No. 489.
 Docket 32213.
 Docket 32214.
 United States Court of Appeals Second Circuit.
 Argued May 8, 1968.
 Decided July 24, 1968.
 
 John M. Johnston, New York City (White & Case and Thomas A. Butler, New York City, on the brief), for plaintiff-appellant.
 E. Roger Frisch, New York City (Walsh & Frisch and Eric M. Dreyfus, New York City, on the brief), for defendant-appellee.
 Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 Nymolla, AB, the plaintiff-appellant, brought suit in the Southern District of New York against the Babcock & Wilcox Company (B & W) to recover $836,000 for an alleged breach of a contract between B & W and Hylte Bruks Aktiebolag (Hylte Bruks) which the plaintiff claimed was for its benefit. B & W moved, pursuant to 9 U.S.C. §§ 3 and 6 for an order staying the suit pending arbitration. The district court found that Nymolla was not a third party beneficiary of the contract and was not a proper party either to participate in the arbitration proceedings or to maintain the suit. It, therefore, dismissed Nymolla's action with prejudice and ordered B & W and Hylte Bruks to proceed forthwith to arbitrate.
 
 
 2
 In 1959 Hylte Bruks, a Swedish corporation, contracted with B & W, a New Jersey corporation, for the purchase of a magnesium bi-sulfite recovery system to be installed by B & W in a mill to be constructed at Ivetofta, Sweden, hereinafter called the Nymolla Mill. The contract contained a standard provision for arbitration,[1] a clause providing that the contract could neither be assigned nor the conditions thereof modified "except by a duly approved agreement signed by both parties,"[2] and a provision that New York law should govern the interpretation of the contract.
 
 
 3
 On November 10, 1960, Mr. Olson of B & W wrote to Mr. Holgersson, Managing Director of Hylte Bruks, stating that he had "first noted" that Hylte Bruks had "apparently * * * formed a new company Nymolla AB, for this project." While Mr. Olson expressed his appreciation of "sound financial reasons behind this move," he noted that "from a purely legal standpoint * * * our boiler contract is with Hylte Bruks AB and that in the contract there is a restriction on transferring the Hylte Bruks AB obligation to any other corporate entity." In the reply letter from Hylte Bruks, Mr. Holgersson, who was also Managing Director of Nymolla, stated that: "The boiler contract and the license agreement being closed between yourselves and Hylte Bruks AB, we do not suggest to have them transferred to the new company but would like you to note that Nymolla AB when discussing with you various aspects on the contract and the agreement is dealing as Hylte Bruks AB's representative."
 
 
 4
 By September, 1962, the recovery system was fully delivered and installed and the Nymolla pulp mill was ready for operation. It is the claim of Hylte Bruks and Nymolla that this system proved to be defective in several respects. Efforts were made to adjust the differences between the parties, including the element of damages, but without success. On April 19, 1967, a demand for arbitration was filed by Hylte Bruks and Nymolla, addressed to B & W, claiming B & W's breach and negligence in performance of its contract with Hylte Bruks. One week later, counsel for B & W wrote to counsel for Hylte Bruks and Nymolla and raised the question of Nymolla's standing to participate in the arbitration as a party claimant on its own behalf. Thereafter, on June 20th, B & W moved to stay the arbitration "for so long as Nymolla, AB is a party thereto * * *." In a letter dated October 17, 1967, addressed to the American Arbitration Association, Nymolla sought unilaterally to withdraw the demand for arbitration. B & W refused, however, to consent to the attempted withdrawal,[3] and on October 24th Nymolla consented to the granting of the motion to stay the arbitration proceedings for such time as it remained a party, and an order to that effect was entered by the district court.
 
 
 5
 The present action was commenced on October 17, 1967, and a copy of the complaint was served on B & W on October 31st. The complaint contained two causes of action, each alleging claims based solely upon the Hylte Bruks — B & W contract; the first claimed a loss of profits because of defective operation and the second claimed a breach of warranty. On November 29, 1967, B & W made a motion in the district court for a stay of the action at law, pending arbitration. After holding a hearing on the motion, the district court found that the parties were in a "procedural cul-de-sac" and said,
 
 
 6
 "In order to obviate the necessity of the court being subject to further proceedings in this matter, and to satisfy the court's sole interest of having the merits of the dispute disposed of as expeditiously as possible, the rights and relationships of the parties will be decided on this motion."
 
 
 7
 Nymolla had sought to show by affidavits and various exhibits that it was a third party beneficiary of the contract between Hylte Bruks and B & W. The trial court held as a matter of law that Nymolla was not a third party beneficiary.[4] It further decided that the real issue was Nymolla's standing to bring a suit and held that it had no such standing and therefore dismissed the action with prejudice. It directed B & W and Hylte Bruks to proceed forthwith to arbitrate. We affirm.
 
 
 8
 On the evidentiary material before it and on Nymolla's claims of law the district court was justified in rejecting Nymolla's assertion that it was a third party beneficiary of the B & W and Hylte Bruks contract. Nymolla was not in existence at the time the contract was made nor was it expressly or by implication mentioned in any way. It relies, however, upon reports of oral conversations at and subsequent to the making of the contract and certain correspondence which show that there were dealings between itself and each of the contracting parties, of which all had knowledge, relative to the delivery and installation of the recovery system in Nymolla's pulp plant in the course of its construction. Nymolla argues that, while the required contractual intent to benefit a third party may be found in the language of the contract, it is not necessary for the creation of rights in a third party that such a party be identified either by name or by reference in the language of the contract, because it may equally well be shown from the facts and circumstances surrounding the execution of the contract. See 2 Williston, Contracts, § 378 (3d ed.). But this is only so where the language of the contract shows that it was entered into for the benefit of a third party, Beveridge v. New York Elevated R. Co., 112 N.Y. 1, 26, 19 N.E.2d 489, 496, 2 L.R.A. 646, (1889); Resinol v. Valentine Dolls, Inc., 14 A.D.2d 853, 220 N.Y.S.2d 884 (1st Dept. 1961); see also, 10 N.Y. Juris. Contracts, § 241, p. 164, even though it may not specifically identify the party and even though the party is not then in existence, Coster v. Mayor of Albany, 43 N.Y. 399 (1870); Solmo v. Rosenberg, 31 Misc.2d 911, 221 N.Y.S.2d 56 (Sup. Ct. Nassau Co. 1961), or that the contract could not be performed without having the benefit fall to a particular third person.
 
 
 9
 "It is not sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties.
 
 
 10
 * * * * * *
 
 
 11
 The agreement under which the third party claims must clearly express an intention to assume a direct duty to him. It is essential not merely that the contract shall operate for the benefit of the third person, but that it shall have been so intended."
 
 
 12
 10 N.Y. Juris, Contracts, § 239, p. 162.
 
 
 13
 In the present case, the agreement between Hylte Bruks and B & W expressly precluded the use of extrinsic evidence by a third party who would seek to maintain a legally enforceable right in the contract.[5] The only part of the contract, to which Nymolla makes reference, as proof of intent to benefit a third party is the caption on its cover which includes the words "for the Ivetofta Mill." But this geographical designation does not suffice, even though Nymolla's assertion may be correct, that the "Ivetofta Mill and the Nymolla Mill are the same." The separate licensing agreement between B & W and Hylte Bruks, on which Nymolla also relies, actually lends support to B & W's contention that the caption refers only to the Parish in Sweden where the mill was to be constructed. There is nothing about the terms of the contract which require or show an intent on the part of B & W or Hylte Bruks to confer a benefit on Nymolla or any unnamed third party; rather, the right to performance runs explicitly and exclusively to Hylte Bruks. "It needs no argument to show that a third party can not turn himself into a beneficiary by enlarging the terms of the contract; he must find in the contract a promise the performance of which will benefit him." 4 Corbin, Contracts, § 779B at 40.[6] We conclude that the district court was correct in rejecting this claim.
 
 
 14
 Nymolla also asserts that the trial court improperly disposed of the question of Nymolla's standing to sue without affording it an opportunity to be heard on that issue. B & W sought to determine the propriety of Nymolla's status as a party claimant in the arbitration proceeding[7] and Nymolla successfully avoided it. That the question of Nymolla's standing, insofar as it was based upon interests as a third party beneficiary, was in issue on B & W's motion for a stay of the litigation and that Nymolla was well aware of it are disclosed by the affidavit of Nymolla's counsel in opposition to B & W's motion to stay the taking of depositions by Nymolla until B & W had an opportunity to make its motion pursuant to 9 U.S.C. § 3. In that affidavit, counsel for Nymolla stated: "On information and belief, the issue which defendant [B & W] will seek to raise by motion is whether Nymolla is a proper party to sue defendant for its breach of contract." B & W expressly continued to press this issue in its brief on the present motion. Nymolla cannot, therefore, claim surprise that the trial court considered its status as a third party beneficiary under the contract.
 
 
 15
 In any event, a motion pursuant to 9 U.S.C. § 3 requires the court "in which suit has been brought `upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967). See, Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978, 988 (2 Cir. 1942). Section 3 "obviously envisages action in a court on a cause of action, * * *." The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 44, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944), and the court must determine "whether there is anything to arbitrate in the contract sued on * * *." Metal Polishers, etc. v. Rubin, 85 F.Supp. 363, 364 (E.D.Pa.1949). This necessitated the court's inquiry into the legal interest which Nymolla asserted in the contract on which its standing was based.
 
 
 16
 The trial court found that Nymolla had no interests as a third party beneficiary and that there was nothing referable to arbitration based upon a privity relationship between B & W and Nymolla under the contract. To avoid further undue delay the court ordered B & W and Hylte Bruks to arbitrate forthwith.
 
 
 17
 Nymolla's claim that B & W waived arbitration relates to various aspects of B & W's attack on Nymolla's standing as a third party beneficiary to be party to the arbitration or to sue in the district court. There was no such waiver. B & W throughout expressed its determination not to waive its right to have the claims against it, under the contract, arbitrated. Its attack against Nymolla's standing to participate in the arbitration does not constitute a default in proceeding with arbitration nor does it bar B & W from seeking a stay. Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2 Cir 1968); Necchi Sewing Machine Sales Corp. v. Necchi S. p. A., 369 F.2d 579, 581 (2 Cir. 1966). In Kulukundis Shipping Co. v. Amtorg Trading Corp., supra, 126 F.2d at 988, Judge Frank stated:
 
 
 18
 "The appellant contested the existence of the charter party which contained the agreement [to arbitrate], but also alternatively pleaded that, if it existed, then there should be a stay pending arbitration of the appropriate issues. We see no reason why a respondent should be precluded from thus pleading in the alternative." (Footnote omitted.)
 
 
 19
 E. I. du Pont de Nemours & Co. v. Lyles & Lang Const. Co., 219 F.2d 328 (4 Cir.), cert. denied, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280 (1955), relied upon by the appellant, is not in point for there the defendant merely pleaded the disputes clause in bar of plaintiff's right to recover and did not ask that any dispute of fact be referred under that section, nor was a stay requested pursuant to 9 U.S.C. § 3.
 
 
 20
 The real basis of the controversy in this case is a claim by Nymolla for a loss of income and profits resulting from its inability to produce wood pulp because of alleged defects in the recovery system furnished by B & W under the contract with Hylte Bruks. Several months after the contract, as revised, was executed and delivered by the parties in September of 1959, Hylte Bruks formed Nymolla as a wholly owned subsidiary corporation to which, in due course, it transferred the mill at Ivetofta, including the recovery system manufactured and installed by B & W. Hylte Bruks received payment on October 13, 1960 by means of selling 60% of Nymolla's stock to the public and retaining the other 40%. After the machinery and equipment were installed and Nymolla sought to go into production, it alleges it was unable to do so because of defects in the recovery system. It now seeks to recover its economic loss from B & W, the manufacturer. Even assuming that Nymolla could prove beyond question that B & W was at fault and that its losses were caused by that fault, Nymolla has found itself up against difficulties in suing for redress. On the one hand Nymolla is not itself in privity with B & W under the contract; and on the other hand, Hylte Bruks, which has such privity and would like to see Nymolla recover its losses, has not suffered the particular damage asserted. Nymolla's effort to establish privity as a third party beneficiary was found wanting and we have concluded that the court was correct in dismissing the action.
 
 
 21
 Nymolla complains that it was unfairly dealt with because the only motion before the trial court was B & W's motion to stay the action pending arbitration, and, if Nymolla lost on that issue, the worst it would have had to face would have been the stay. Although its standing as a third party beneficiary was argued and B & W had been pressing its claim on that point for several months, Nymolla says it was surprised and deprived of a fair opportunity to be heard when the trial court without any advance notice that it might do so, decided to dismiss the action with prejudice. The weakness of Nymolla's argument in this regard is that its entire claim rested on its assertion that it was a third party beneficiary. But all of the competent evidentiary matter produced showed that it was not a third party beneficiary as a matter of law. Nymolla disclosed no evidence or sources of evidence which could change that conclusion, nor did it, in the course of combating the motion for a stay, advance any other theory which would achieve a different result. However, without considering limitations or choice of law issues which may or may not be involved, the evidentiary material presented by Nymolla may suggest a cause of action by Nymolla as a purchaser for breach of warranty against B & W, as the manufacturer, on the ground of representations made that the pulp mill would have a capacity of 200 metric tons of bleached pulp per day. Randy Knitwear Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); 16 A.L.R.3d 683; 66 Colum.L. Rev. 917 (1966).[8] Of course, discovery and disclosure addressed to the substantiation of such a claim might show that it had little or no foundation, and it might founder on a motion for summary judgment. At best such a cause of action lies in the outer reaches of a changing area of the law. The only reason for mentioning it here at all is that, if such an action were brought, the present opinion and holding should not be construed as res adjudicata as to such an action,[9] nor should it be interpreted as barring by equitable estoppel, proof of representations made by B & W in connection with the making of the contract or in the express provisions of the contract itself, insofar as they were pointed out to and relied upon by Nymolla after its incorporation. This possibility is noted because of the apparently very close tie between Hylte Bruks and Nymolla and their interlocking management personnel.
 
 
 22
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The arbitration clause read as follows:
 "Any controversy or claim * * * [except for personal injuries, death, or property damage] arising out of or relating to this Contract or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and the judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof. Arbitration shall be in the State of New York, U. S. A."
 
 
 [2]
 By contrast, an agreement also entered into by B & W and Hylte Bruks in 1959, by which Hylte Bruks was granted a license to use certain patents and "knowhow," did not contain an arbitration clause and expressly permitted an assignment of the agreement "to any successor in interest to the operations of the Licensee at its Ivetofta pulp mill." While this may indicate that B & W may have known that Hylte Bruks contemplated a "successor in interest" to those operations, it also illustrates B & W's desire to maintain a contractual relationship with the successor on the equipment contract. By letter dated January 10, 1964, Hylte Bruks notified B & W that the licensing agreement had been transferred to Nymolla
 
 
 [3]
 On October 6, 1967, counsel for Nymolla proposed that B & W agreed to the withdrawal of Nymolla's demand for arbitration, without prejudice, for the stated purpose of enabling Nymolla alone to commence a court action against B & W. In a letter dated and delivered on October 16th to Nymolla's counsel, counsel for B & W expressed unwillingness to litigate contract claims with Nymolla or consent to the unilateral withdrawal of the demand for arbitration. Refusing to waive its asserted right to arbitration of disputes under the contract, B & W suggested that Nymolla respond to the motion for a stay so that the question of Nymolla's standing could be determined at the outset of arbitration. Nonetheless, Nymolla sought unilaterally to withdraw the demand on the following day
 
 
 [4]
 "Essentially the parties are arguing the standing of Nymolla either to bring the action or to participate in the arbitration. The cases relied upon by Nymolla to come within the third party beneficiary concept are not in point. In all of those cases the contract either expressly or impliedly referred to the fact that the parties intended to form such a corporation. The result was that an inchoate corporation which subsequently came into being was found to have enforceable rights. Even though Babcock & Wilcox may have known that Hylte Bruks intended to form a corporation for the purposes of constructing and operating the mill, it specifically reserved its rights to be in any legal relationship with such third party. Furthermore, the letter stating that Nymolla should be considered as the representative or agent of Hylte Bruks negatives any third party standing."
 
 
 [5]
 The contract provided:
 "There are no understandings between the parties hereto as to the subject matter of this Proposal other than as herein set forth and in the accompanying letters specifically referred to herein. All previous communications between the parties hereto, either verbal or written, are hereby abrogated and withdrawn and the acceptance of this Proposal with the specifications, drawings and accompanying letters specifically referred to herein constitutes the whole agreement between the parties hereto. The Contract cannot be assigned nor may the general conditions be modified except by a duly approved agreement signed by both parties."
 
 
 [6]
 Corbin would appear willing to allow a party to establish his status as a third party beneficiary by evidence wholly extrinsic to the written contract, that is, "even though the written contract itself contains no indication of such intent." 4 Corbin, Contracts, § 779C (1964 Supp.) at 17. See, 4 Corbin, Contracts, § 776 (1964 Supp.) at 7. This, of course, does not relate to a contract such as the one here where a provision of the agreement itself in effect excludes the use of extrinsic evidence. In any event, Corbin appears more liberal in this respect than the New York courts
 
 
 [7]
 See note 3, supra
 
 
 [8]
 Another possible ground for claim might be Personal Property Law of New York § 96, McKinney's Consol.Laws, c. 41, implied warranty for particular purpose
 
 
 [9]
 Cf. Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209, reh. denied 305 N.Y. 926, 114 N.E.2d 477
 
 
 LUMBARD, Chief Judge (concurring):
 
 23
 I concur in Judge Anderson's opinion except for that part of it which speculates regarding possible remedies which may be open to the appellant Nymolla. Lacking a sufficient record as to the surrounding circumstances of the issues which might arise in some other proceeding, and uninformed as to what law might govern, it seems to me that my colleagues would be better advised to say nothing. In any event such addenda have only the featherweight of dicta.