COMPUTER SCIENCES CORPORATION, a
corporation of the State of Nevada,
Plaintiff,

v.

SCI–TEK, INCORPORATED, a corporation
of the State of Delaware, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted Aug. 20, 1976.

Decided Dec. 2, 1976.

James A. Fuqua, Jr., of Ennis & Fuqua, Georgetown, and Neal D. Peterson, of Peterson, Engberg & Peterson, Washington, D.C., for Computer Sciences Corporation, plaintiff.

Richard Allen Paul, of Paul & Lukoff, Wilmington, for Sci-Tek, Inc., defendant.

Richard P. Beck, of Morris, James, Hitchens & Williams, Wilmington, for American Financial Leasing & Services Co., amicus curiae.

WALSH, Judge.

In this matter, the defendant, judgment-debtor, Sci-Tek, Inc. (Sci-Tek), a Delaware corporation has moved to quash a levy on certain computer equipment in its possession issued at the behest of the plaintiff, judgment-creditor, Computer Sciences Corporation (CSC), a Nevada corporation. The Sheriff of New Castle County who executed the levy also requests a determination of his authority to retain the property. American Financial Leasing and Services Company (Am-Fin), an Ohio corporation which claims to be the lessor of the property in dispute has appeared as *amicus curiae* in support of Sci-Tek's position.

■ A brief review of the facts necessary to decide the matter discloses that, in October, 1973, Am-Fin and Sci-Tek entered into an agreement under which Sci-Tek acquired certain computer equipment to be used by Sci-Tek in its business operations. The agreement is cast in terms of a master lease, under which Am-Fin is the owner-lessor of the equipment and Sci-Tek is the lessee. After entering into the agreement, Sci-Tek contracted with CSC, for maintenance and repair of the computers. In December, 1974, Sci-Tek was liquidated after suffering severe financial losses. The computer equipment was assigned to its President and sole shareholder, Henry E. I. duPont, who in turn assigned it to Transport Data Communications, Inc. (TDC), a corporation then being managed by a trustee in bankruptcy. In June, 1975, CSC commenced an action against Sci-Tek in this Court and obtained a default judgment in the amount of $69,554.29 in August, 1975.[1] In September, 1975, TDC was adjudicated a bankrupt and the computer equipment was assigned to Futures Unlimited, Inc. pursuant to the agreement entered into between Mr. du-Pont and TDC. Futures Unlimited is owned by Mrs. Henry duPont. Shortly after the transfer to Futures Unlimited, CSC directed the Sheriff to levy on the equipment to satisfy the judgment against Sci-Tek. Equipment valued by the Sheriff at $180,000 was seized.

In support of their motion, Am-Fin and Sci-Tek argue that a Sheriff executing a judgment may seize only property belonging to the judgment-debtor and, since title to the computer equipment was at all times

---

1. Sci-Tek here attempts to argue the validity of this judgment but since a motion to set aside the judgment was not filed until after the parties had briefed the issue of the effectiveness of the levy, the underlying judgment will be considered presumptively valid subject to a later ruling should that issue become ripe for resolution.

in Am-Fin under the terms of the lease, the levy is improper and should be quashed. In opposition, CSC contends that Sci-Tek's interest in the computers can properly be attached and sold to satisfy the judgment. In the alternative, CSC argues that the purported lease is really a financing device and that Am-Fin retained only a security interest in the computers. Upon this premise, the argument goes, the transaction falls within 6 Del.C. § 9–311[2] and the debtor's interest is subject to levy. CSC also argues that the assignment of the computers by Sci-Tek was a fraudulent conveyance of assets within the meaning of 6 Del.C. § 1301 *et seq.*, and the computers can be levied on pursuant to 6 Del.C. § 1309(a)(2)[3]. In reply, Sci-Tek denies any fraud, and Am-Fin contends that even if the lease is construed as a security device it is entitled to possession, since it is the senior secured creditor and has priority over a subsequent lien creditor.

■ Attachment is a statutory action at law that enables a creditor to levy on property of his debtor to satisfy a debt. *John Julian Const. Co. v. Monarch Builders, Inc.,* Del.Super., 306 A.2d 29 (1973), *aff'd,* Del.Supr., 324 A.2d 208 (1974); 10 Del.C. § 5031. Property which may be attached in Delaware includes "Goods, chattels, rights, credits, moneys, effects, lands and tenements . . .". 10 Del.C. § 3508. Counsel has not cited, nor has the Court found, any Delaware decision that has construed a lessee's interest in personal property as embraced within the attachable interests set forth in § 3508 or has permitted such interest to be levied on in satisfaction of a judgment against the lessee. Decisions in other jurisdictions that have permitted such attachments rely on express statutory authority. See, *Hendon v. McCoy,* 222 Ala. 515, 133 So. 295 (1931). Thus, if the agreement between Sci-Tek and Am-Fin is viewed as a lease, the levy was improper and should be quashed.

■ The determination of whether the agreement is a lease or a secured transaction within the meaning of 6 Del.C. § 9–101 *et seq.* requires the Court to look beyond the face of the agreement and view the nature of the transaction in its entirety. When this is done, it becomes evident that the lease is one intended as a security device and, therefore, falls squarely within Article 9 of the Uniform Commercial Code.

■ As Am-Fin contends, the fact that a lease includes an option to purchase or an agreement that the lessee can become the owner of the property at the end of the lease term for a nominal consideration, does not, in and of itself, make the lease one intended for security. 6 Del.C. § 1–201(37). But, the agreement between Sci-Tek and Am-Fin contains both of the above terms and several other indicia of a financing device. If Sci-Tek defaulted in its monthly payments of $50,000, it became immediately liable, not only for the total amount of unpaid rent, but also for any deficiency resulting from a sale of the equipment not equaling the estimated market value of the equipment as defined by contract. Am-Fin acquired a security interest not only in the leased computers, but also in other computer equipment in the possession of Sci-Tek. The agreement provided that Am-Fin was to secure a mortgage on real estate owned by Sci-Tek

2. "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

3. "(a) Where a conveyance or obligation is fraudulent· as to a creditor, such creditor, when his claim may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser: * * * (2) Disregard the conveyance and attach or levy execution upon the property conveyed."

and further provided that duPont personally guarantee the payments under the lease. Moreover, concurrent with the lease, Am-Fin filed financing statements with the Secretary of State and the New Castle County Recorder of Deeds. The conclusion is inescapable that the lease was intended as a financing device and that Am-Fin's interest in the computers is a security interest.

■ Were this end of the inquiry, it would suffice simply to rule the levy valid since it is well established in this jurisdiction that a creditor may levy on secured property in the possession of a debtor with the proceeds being distributed according to the priority of interests. *Maryland Nat. Bk. v. Porter-Way Harvester Mfg. Co.,* Del.Supr., 300 A.2d 8 (1972); *E. L. Jones & Co. v. Unruh,* Del.Super., 7 W.W. Harr. 241, 182 A. 211 (1935); 6 Del.C. § 9–311. However, a further issue looms. At the time of the levy by CSC, Sci-Tek's interest in the computers had been assigned several times, finally coming to rest in Futures Unlimited, Inc. Thus, on the date of the levy, October 15, 1975, "record ownership" of the computers was in Futures Unlimited, as an assignee of TDC. CSC asserts that the assignments were fraudulent under the Uniform Fraudulent Conveyance Act, 6 Del.C. § 1301, *et seq.* and thus not entitled to judicial recognition.

In *Sonne v. Sacks,* Del.Supr., 314 A.2d 194 (1973), the Supreme Court indicated that tangible assets transferred by a corporation insolvent at the time of such transfer could be subject to seizure under § 1309 of the Uniform Fraudulent Conveyance Act. The Court found it unnecessary to reach the issue, however, because the assets allegedly conveyed had lost their identity.

■ As noted before, attachment is a proceeding at law and a court of law is competent to adjudicate issues of fraud which may underly the effectiveness of its execution process. *John Julian Construction Co., supra.* Thus, a defrauded creditor who wishes to avail himself of the remedy provided by § 1309(a)(2) may do so in Superior Court and need not resort to the Court of Chancery to have the conveyance set aside as provided in § 1309(a)(1). This avenue of relief is particularly appropriate where the identity of the property has been maintained and its location secured.

The parties are in sharp disagreement concerning the validity of the transfer to TDC, which was, itself, in receivership at the time of the purported transfer. The validity of the transfer is subject to question because of duPont's role in acquiring the bulk of Sci-Tek's assets in exchange for debts owed him by Sci-Tek and, in turn, transferring those assets to TDC in exchange for TDC stock and the assumption by TDC of his personal obligations under the Am-Fin lease. CSC claims to have been deceived by these dealings. The allegation of fraud is premised upon factual controversies which cannot be resolved on this record of assertion and counter-affidavits. An evidentiary hearing will be required to determine whether the seized equipment had been properly transferred from Sci-Tek before the date of the levy. Jurisdiction is reserved for this purpose.

IT IS SO ORDERED.