**AMERICAN FINANCIAL CORPORA-TION, an Ohio corporation,
Plaintiff,**

v.

**COMPUTER SCIENCES CORPORA-TION, a Nevada corporation,
Defendant.**

Civ. A. No. 77–2.

United States District Court,
D. Delaware.

March 4, 1983.

Richard P. Beck, of Morris, James, Hitchens & Williams, Wilmington, Del., for plaintiff.

Melvyn I. Monzack, of Walsh, Monzack & Owens, Wilmington, Del., for defendant; Neal D. Peterson, of Peterson, Engberg & Peterson, Washington, D.C., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This case arises out of a dispute between competing creditors of Sci-Tek, Inc. (hereinafter "Sci-Tek") and Transportation Data Communications Company (hereinafter "TDC"), Sci-Tek's successor in interest. Presently before the Court are plaintiff's and defendant's cross-motions for summary judgment. The matters were referred and assigned to the Honorable N. Richard Powers, U.S. Magistrate, in accordance with 28 U.S.C. § 636 and the Local Magistrate Rules of this Court.

The facts and procedural background, which are fully detailed in the Magistrate's Report and Recommendation, are only briefly set forth here. The plaintiff, American Financial Corporation (hereinafter "Am. Fin."), leased UNIVAC computer systems and supporting equipment to Sci-Tek and TDC.[1] Sci-Tek in turn contracted with the defendant Computer Sciences Corporation (hereinafter "CSC"), to maintain and repair the leased computers. Thereafter, Sci-Tek and TDC ran into financial difficulties and eventually became insolvent. At the time of insolvency, Sci-Tek and/or TDC was indebted to both Am. Fin. and CSC, and this litigation concerns the efforts of these creditors to protect their financial positions.

Am. Fin. seeks recovery against CSC based on various contract and tort theories. Counts I and IV of the complaint allege that CSC breached its maintenance contract with Sci-Tek/TDC thereby causing damage to the computer systems. Am. Fin. maintains in Counts I and IV that it has a right to sue on the contract between CSC and Sci-Tek/TDC as a third-party beneficiary. Count II realleges the same injuries set forth in Count I, but sounds in tort under theories of bailment and conversion. Count III alleges that CSC negotiated in bad faith with Am. Fin. in the sale of one of the computers leased by Sci-Tek/TDC. Count V alleges that CSC, as a junior creditor to Am. Fin., wrongfully converted Am. Fin.'s property when CSC refused to lift a levy on the leased equipment. As a result, Am. Fin. claims that it suffered injury because it was unable to dispose of the property as it saw fit.

On the cross-motions for summary judgment filed on all counts, the Magistrate recommended the following:

1.) Summary Judgment should be granted for the defendant in Counts I and IV because as a matter of law Am. Fin. is not a third-party beneficiary to the maintenance contract between CSC and Sci-Tek/TDC.

2.) Summary Judgment should be granted for the defendant on Count II because Am. Fin.'s claims against CSC are not cognizable in tort.

3.) Summary Judgment should be denied on Count III because there are material issues of fact on whether CSC bargained in bad-faith with Am. Fin. concerning the sale of one of the computers leased to Sci-Tek/TDC.

4.) Summary Judgment should be granted for the defendant on Count V because the defendant's actions concerning the levy on the leased equipment were clearly permissible under established Delaware law.

See Magistrate's Report and Recommendation dated December 13, 1982 (hereinafter "Magistrate's Report"). After a de novo review of the entire report,[2] the Court will adopt the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The Court writes separately only to clarify and supplement portions of the Report, particularly those dealing with the issue of Am.

---

1. The lease, in reality, was a security agreement by which Am. Fin. held a perfected security interest in the leased equipment, i.e., Am. Fin. was a secured creditor. See *Computer Sciences Corp. v. Sci-Tek, Inc.,* 367 A.2d 658, 660–61 (Del.Super.1976).

2. The entire report was reviewed because all portions of the report were objected to in some form. See 28 U.S.C. § 636(b)(1)(C).

Fin.'s status as a third-party beneficiary under Delaware law.

### Am. Fin.'s Status As A Third-Party Beneficiary

The Magistrate recommended summary judgment for the defendant on Counts I and IV because Am. Fin. was not a third-party beneficiary to the maintenance contracts [3] between CSC and Sci-Tek/TDC. The Magistrate stated:

I conclude that Am. Fin. does not enjoy the status of a third party beneficiary of CSC's contracts with Sci-Tek and TDC because there is nothing in the maintenance agreements which contemplates or even hints at the existence of a third party who might have some right to or benefit from CSC's performance. In the absence of some language in the contract to indicate the existence of a third party, the fact that evidence may exist to demonstrate that Sci-Tek and TDC intended to confer a benefit upon Am. Fin. by executing the maintenance contracts is simply irrelevant. In *Oliver B. Cannon Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322, 326–328 (Del.Super.1973), then Chancellor Quillen, sitting by designation, held that the status of creditor beneficiary depends on the manifested intent of the parties to the contract. If a court can determine from the reading of the contract that the parties contemplated the existence of a third party, then it can look to surrounding circumstances to determine the identity of the third party. However, unless the contract itself discloses the existence of a third party with some interest in the contract, there is no point in considering the surrounding circumstances as to the unilateral intent of one of the parties.

Magistrate's Report at 19–20. This ruling of the Magistrate in essence holds that: (1) in order to be a third-party beneficiary under Delaware law, both parties to the contract must indicate an intention to benefit the third-party, and; (2) the aforesaid intention must either implicitly or explicitly be expressed in the contract before extrinsic evidence can be used to further ascertain the intention of the parties. *See also American Elec. Power Co., Inc. v. Westinghouse Elec. Corp.,* 418 F.Supp. 435, 447 (S.D. N.Y.1976) (discussing Pennsylvania law).

Am. Fin. takes exception to the Magistrate's ruling in this regard. Am. Fin.'s initial contention is that CSC's intent is irrelevant in determining whether Am. Fin. is a third-party beneficiary because it is only the intent of the promisee, Sci-Tek/TDC, that is of concern. *See generally* 4 *Corbin on Contracts,* § 777 at 24–28 (1951). Since Sci-Tek/TDC was required under its lease agreement with Am. Fin. to enter into a maintenance agreement,[4] Am. Fin. contends that Sci-Tek/TDC clearly intended to benefit Am. Fin. when it entered into the maintenance agreement with CSC. Am. Fin. further argues that even if the intent of CSC is of relevance, such intent can be demonstrated wholly by extrinsic evidence. *See* 4 *Corbin on Contracts* § 776, Supp. at 7 (Supp.1971). Am. Fin. contends that evidence in the record demonstrates

---

**3.** Although the Magistrate's Report refers to "contracts" between CSC and Sci-Tek and TDC, there was only one written contract—the December 14, 1973 agreement between CSC and Sci-Tek which was effective for one year commencing on January 1, 1974. *See* CSC Maintenance Agreement with Sci-Tek at 1. CSC never entered into a written agreement with TDC, *see* Letter from A.D. Wilson (CSC) to Robert M. Urich (TDC) (August 28, 1975), because TDC was not able to do so while in bankruptcy reorganization. Deposition of Alan D. Wilson at 18. CSC did propose interim letter agreements to TDC, but they were never signed or accepted. Letters from E.C. Anderson (CSC) to Anthony Wood (TDC) (February 6, 1975 and February 17, 1975); *see* Affidavit of David Michaels (TDC), ¶ 5 at 2. Nevertheless, CSC continued to provide service to TDC generally in accord with the contract between CSC and Sci-Tek. *Id.,* ¶¶ 4, 5 at 1–2; *see* Deposition of Alan D. Wilson (CSC) at 18–21; Plaintiff's Main Brief in Support of its Motion for Partial Summary Judgment at 13. Therefore, the rights of the parties must be distilled from the December 14, 1973 agreement, and it is that contract upon which the plaintiff asserts rights as a third-party beneficiary. Complaint ¶¶ 10 and 24; *see also* Affidavit of David Michaels, ¶ 5 at 2.

**4.** *See* Master Lease Agreement, § 8(a) at 7.

that CSC "knew or should have known"[5] that Am. Fin. was an intended third-party beneficiary.

■ Notwithstanding plaintiff's arguments, the Court agrees with the Magistrate that under Delaware law both parties must in some manner express an intent to benefit the third-party before third-party beneficiary status is found. *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675, 679 (Del.Super.1980) (*contracting parties* must intend to confer a benefit) (emphasis added); *accord, Holbrook v. Pitt,* 643 F.2d 1261, 1270–1271 n. 17 (7th Cir.1981); *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 399 F.2d 289, 292 (2d Cir.1968) (applying New York law); *Spires v. Hanover Fire Ins. Co.,* 364 Pa. 52, 56–57, 70 A.2d 828, 830–831 (1950); *Restatement (Second) Contracts,* § 302(1) at 439 (1981) (intended beneficiary is appropriately found when necessary to effectuate the *intention of the parties* ...) (emphasis added). It is improper to disregard the reasonable expectations of the promisor because the burden of the agreement to the promisor will vary according to the number of parties who have enforceable rights under the contract, which in turn will impact on the amount of consideration that the promisor will require to enter the agreement. *Holbrook v. Pitt,* 643 F.2d at 1270–1271 n. 17. To allow the unilateral intent of one party to determine the existence of a third-party beneficiary would thwart the power that contracting parties should have to control their legal relations, particularly in a commercial setting. Therefore, the Court must agree with

the Magistrate that the unilateral intent of Sci-Tek/TDC does not control whether or not Am. Fin. was an intended third-party beneficiary.

■ The next issue is, assuming Sci-Tek/TDC intended to benefit Am. Fin., did CSC have a similar intent when it contracted with Sci-Tek/TDC. The Magistrate found that the contract between CSC and Sci-Tek does not in any manner contemplate an intent to benefit Am. Fin. The Magistrate further indicated that under the authority of *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver Inc.,* 312 A.2d 322 (Del.Super. 1973), extrinsic evidence could not be examined when the contract itself does not contemplate the existence of a third party. Magistrate's Report at 19–20. As such, the Magistrate concluded that Am. Fin. was not a third-party beneficiary without reviewing any extrinsic evidence.

The Court agrees with the Magistrate that the contract between CSC and Sci-Tek is completely devoid of any contemplation of the existence of a third party.[6] The question that arises then, is whether the Court should look to extrinsic evidence to ascertain CSC's intent when the contract itself does not suggest such an intent. There is a division of authorities on this issue.

Professor Corbin has suggested that it may be possible to ascertain third-party beneficiary status wholly from extrinsic evidence. *See* 4 *Corbin on Contracts,* § 776 at Supp. 7 (Supp.1971). Some courts, however,

---

**5.** Am. Fin. argues that CSC "knew or should have known" because:

(1) CSC is familiar with complex financing agreements common to the computer industry and therefore should have known Sci-Tek/TDC was leasing the equipment; and

(2) Am. Fin. had filed financing statements indicating its ownership and therefore CSC had constructive notice; and

(3) CSC, about one year after it entered into the original contract allegedly found out through an agent that Am. Fin. owned the equipment.

*See* Plaintiff's Main Brief in Support of Its Motion for Partial Summary Judgment at 13–14, 47 (August 5, 1981). Plaintiff contends

that, at a minimum, these factors create a genuine issue of material fact on the issue of CSC's intent so as to preclude summary judgment. *See* Plaintiff's Objections to the Magistrate's Report and Recommendation at 4 n. 2 (January 7, 1983).

**6.** The Court recognizes that Am. Fin. need not be specifically mentioned in the contract before third-party beneficiary status is found. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver Inc.,* 312 A.2d at 326. The issue is simply whether the language of the contract in some way, either explicitly or implicitly, indicates an intent to benefit the third party. *See id.; see also Holbrook v. Pitt,* 643 F.2d at 1270–1271, n. 17.

have taken a completely opposite approach, and have indicated that third-party beneficiary status must be disclosed wholly within the "four-corners" of the contract. *Republic Nat'l Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 81 (Tex.Civ.App.1968). The problem in this case, of course, is to ascertain exactly what approach would be taken by the Delaware courts.

There is no case in Delaware which explicitly deals with this issue. Delaware courts, however, have oft-stated the rule that whether the parties intended to create a third-party beneficiary turns on the language expressed in the contract. *See e.g., Royal Indemnity Co. v. Alexander Industries, Inc.,* 211 A.2d 919, 920 (Del.1965); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d at 326. Consequently, the Magistrate found that a Delaware court would look to extrinsic evidence to determine third-party beneficiary status, but only if the contract indicates that the parties contemplated the existence of the third party. *See Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d at 327. The Magistrate's approach provides a middle ground between those suggested by Professor Corbin and the court in *Republic Nat'l Bank v. National Bankers Life Ins. Co.*

The Magistrate's approach is reasonable, properly construes Delaware case law, and is explicitly adopted in other jurisdictions. For example, the Second Circuit Court of Appeals, in reviewing New York law, found that extrinsic facts and circumstances surrounding the execution of the contract can be examined for purposes of ascertaining third-party beneficiary status. *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 399 F.2d 289, 292 (2d Cir.1968). The Court further stated, however, that:

> . . . this is only so where the language of the contract shows that it was entered into for the benefit of a third party, even though it may not specifically identify the party. . . .

*Id.* (citations omitted). The Court concluded that because nothing in the terms of the contract suggested an intent to benefit a third party, the use of extrinsic evidence was not proper. *Id.* at 292–293; *see Isbrandtsen Co., Inc. v. Local 1291 of Int. Longshoremen's Ass'n,* 204 F.2d 495, 498 n. 13 (3d Cir.1953) (no authority supporting contention that promisor liable to third-party beneficiary not contemplated in contract).

The *Hylte Bruks Aktiebolag* court expressly recognized the position taken by Professor Corbin, but stated that Corbin's suggestion that third-party beneficiary status could be wholly determined from extrinsic evidence was not applicable to a contract which includes a clause excluding the use of extrinsic evidence. 399 F.2d at 293 n. 6. The contract between CSC and Sci-Tek contains an exclusion clause similar to the one contained in the contract reviewed by the *Hylte Bruks Aktiebolag* court. *Compare* 399 F.2d at 292 n. 5 *with* CSC Maintenance Service Agreement with Sci-Tek, Article XI at 9.[7] Consequently, even if Professor Corbin's approach was adopted by the Delaware courts, it would have no bearing on this case because an exclusion clause is found in the contract. *Cf., American Elec. Power Co., Inc. v. Westinghouse Elec. Corp.,* 418 F.Supp. 435, 449 n. 18 (S.D.N.Y.1976). Therefore, the Court adopts the Magistrate's finding that extrinsic evidence need not be reviewed in this specific instance, and further agrees that summary judgment should be entered against Am. Fin. on Counts I and IV because Am. Fin. is not a third-party beneficiary to the contract between CSC and Sci-Tek/TDC.

*Am. Fin.'s Tort Claims*

The Magistrate concluded that predicting liability against CSC on a tort theory wrenches "the concepts of bailment and

---

**7.** Article XI provides:

This Agreement shall be governed by the domestic laws of the State of Delaware. This Agreement constitutes the entire Agreement between the parties hereto with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings. It may not be released, discharged, changed, or modified except by an instrument in writing signed by a duly authorized representative of each of the parties.

conversion beyond their normal meaning. . . ." Magistrate's Report at 25. The Court agrees with the Magistrate's conclusion and wholly adopts the Magistrate's rationale for granting summary judgment to CSC on Count II.

*Am. Fin.'s Claim Against CSC For Bad-Faith In Negotiating For The Sale Of One Of The Leased Computers*

The Magistrate concluded that genuine issues of material fact exist on this claim which preclude a grant of summary judgment for either party on Count III of the complaint. Upon review of the record, and further noting that the Third Circuit Court of Appeals has characterized summary judgment as a "drastic remedy," [8] this Court fully adopts the Magistrate's recommendation to deny summary judgment on Count III of the complaint.

*Am. Fin.'s Claim That CSC Wrongfully Insisted That The Sheriff Of New Castle County Dispose Of The Leased Equipment*

The Magistrate concluded that summary judgment for the defendant on Count V was appropriate:

> Since upon the undisputed record it appears that CSC acted within its right in resisting Am. Fin.'s demand that it instruct the Sheriff to release the goods from the levy and since any resultant harm was occasioned by delays caused by Am. Fin.'s and Sci-Tek's challenge to the levy. . . .

Magistrate's Report at 43. The Court agrees with the Magistrate's finding, but makes one observation in response to an argument proffered by Am. Fin.

▆ Am. Fin. objects to the rule applied by the Magistrate which allows a junior creditor to levy on secured property and then permits the Sheriff to sell the goods. Am. Fin. has argued to the Court that the rule in most Uniform Commercial Code ("UCC") jurisdictions is that a junior creditor must withdraw a levy when confronted with a demand from a senior secured creditor to do so, or else be liable in tort for conversion. *See e.g., First Pennsylvania*

*Banking & Trust Co. v. Liberati*, 282 Pa.Super. 198, 422 A.2d 1074, 1077 (1980); *Royal Store Fixture Co. v. New Jersey Butter Co.*, 114 N.J.Super. 263, 276 A.2d 153, 155–56 (App.Div.1971). Am. Fin. contends that it will impede the development of computer leasing in Delaware if a secured creditor's right to dispose of the secured property as it sees fit is impaired by a junior creditor's lawful ability to levy on the secured property and force a sheriff's sale.

Whether or not plaintiff's policy argument is correct is irrelevant because it is apparent that Delaware does not adhere to the rule outlined in *First Pennsylvania Banking & Trust Co. v. Liberati*, and *Royal Store Fixture Co. v. New Jersey Butter Co.* In a UCC case, the Delaware Supreme Court has adhered to the following common law rule:

> It has long been settled by case law in this State that a creditor may levy against secured property in the hands of a debtor with the resultant proceeds being distributed on the basis of the priority of liens.

*Maryland National Bank v. Porter-Way Harvester Mfg. Co.*, 300 A.2d 8, 11 (Del. 1972). Indeed, this point of law already has been applied to deny an effort to quash the CSC levy in related litigation. *Computer Sciences Corp. v. Sci-Tek, Inc.*, 367 A.2d 658, 661 (Del.Super.1976). A Federal District Court sitting in diversity has no authority to alter articulated Delaware law in order to promote arguably desirable goals in the area of commercial law.

In conclusion, the Magistrate's Report and Recommendation is adopted. The defendant's Motion for Summary Judgment is granted with respect to Counts I, II, IV and V of the complaint. The defendant's Motion for Summary Judgment is denied insofar as it pertains to Count III of the complaint. The plaintiff's Motion for Summary Judgment is denied with respect to all counts. An Order will be entered in accordance with the Magistrate's Report and Recommendation and this Opinion.

---

**8.** *Hollinger v. Wagner Mining Equip. Co.*, 667 F.2d 402, 405 (3d Cir.1981).