PHILLIPS USA, INC., and William Felton & Company Pty., Limited, Plaintiffs,

v.

ALLFLEX USA, INC., Allflex New Zealand, Ltd., Allflex, S.A., and S.F.I.E., Defendants.

No. 94–2012–JWL.

United States District Court, D. Kansas.

Nov. 2, 1994.

Order Supplementing Decision Nov. 30, 1994.

844

Paul P. Hasty, Jr., Richmond M. Enochs, and Karl W. Kuckelman, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Over-

land Park, KS, for Phillips USA, Inc. and William Felton & Co. Pty., Ltd.

Kathleen A. McNamara, Jolley, Walsh & Hager, P.C., Kansas City, MO, Dennis G. Martin, Jill M. Pietrini, Blakely, Sokoloff, Taylor & Zafman; and C Dickinson Hill, Los Angeles, CA, for Allflex USA, Inc., Allflex New Zealand, Ltd., Allflex North American Holdings, Inc. and Allflex, S.A.

William R. Sampson and Paul W. Rebein, Shook, Hardy & Bacon, Overland Park, KS, for N.J. Phillips Pty. Ltd.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is currently before the court on an abundance of motions ripe for decision in this case. They are: the Motion of Allflex USA, Inc. ("Allflex USA") to Dismiss for Failure to Prosecute and Failure to Comply With Discovery Orders (Doc. # 13); the Motion of Allflex USA to Compel Response to Third Request for Production of Documents From Allflex USA and for Dismissal and Other Sanctions (Doc. # 14); the Motion of Allflex S.A. ("Allflex SA") to Dismiss for Lack of Personal Jurisdiction and for Failure to Prosecute (Doc. # 101); the Motion of Allflex New Zealand, Ltd. ("Allflex NZ") to Dismiss for Lack of Personal Jurisdiction and Failure to Prosecute and for a More Definite Statement (Doc. # 132); the Motion of Allflex NZ and Allflex SA for Summary Judgment on all Claims (Doc. # 143); the Motion of Allflex USA for Summary Judgment on the Remaining Counts of the Complaint (Doc. # 146); the Motion of William Felton & Co., et al. to Amend the Court's Scheduling Order (Doc. # 156); the Motion of William Felton & Co., et al. for Leave to Take the Deposition of Robert Yates Out of Time (Doc. # 158); the Request of Defendants for Oral Argument on the Motions (Doc. # 160); the Motion of William Felton & Co., et al. to Extend Time to File Expert Report (Doc. # 162); the Motion of William Felton & Co., et al. for Leave to Take the Depositions of Robert Myles Abrahams and Anthony Burrell (Doc. # 172); the Motion of William Felton & Co., et al. to Compel Allflex USA to Produce Documents Requested in Plaintiffs' Request for Production (Doc. # 175); the Motion of William Felton & Co., et al. for Order Granting Relief From Protective Order (Doc. # 181); and the Motion of William Felton & Co., et al. for Supplemental Order for Determination Under Fed.R.Civ. Pro. 54(b) (Doc. # 202).

The court rules as follows: the Motion of Allflex USA to Dismiss for Failure to Prosecute and Failure to Comply With Discovery Orders is granted; the Motion of Allflex USA to Compel Response to Third Request for Production of Documents From Allflex USA and for Dismissal and Other Sanctions is granted in part; the Motion of Allflex NZ and Allflex SA for Summary Judgment on all Claims is granted; the Motion of Allflex USA for Summary Judgment on the Remaining Counts of the Complaint is also granted. The Motion of William Felton & Co., et al. for Supplemental Order for Determination Under Fed.R.Civ.Pro. 54(b) is denied, as is Defendant's Request for Oral Argument. All remaining motions are denied as moot.

## I. PROCEDURAL BACKGROUND

The procedural history of this case is a long and tortured one. The present action was filed by plaintiffs Phillips USA, Inc. ("Phillips USA") and William Felton & Company Pty. Ltd. ("Felton & Co.") against Allflex USA, Allflex NZ, Allflex SA, N.J. Phillips Pty. Ltd. ("NJP") and various other defendants on January 7, 1994. It involves a number of claims, including breach of fiduciary duty, tortious interference with contract and civil conspiracy arising out of a series of transactions concerning the sale and distribution of veterinary products manufactured by NJP and distributed in the United States by plaintiff Phillips USA and, additionally, Allflex USA. This is the second action by plaintiff Phillips USA alleging such claims against Allflex USA, Allflex NZ, Allflex SA, NJP and others. Phillips USA first filed suit in 1992 (the "1992 action"), but that complaint was dismissed in late 1993.

Before entering litigation in the United States, plaintiffs Phillips USA and Felton & Co. brought an action in the Federal Court of Australia, New South Wales District ("Australian action") against NJP alleging, among

other things, breach of an exclusive distributorship agreement with Felton & Co. On May 29, 1992, the Australian court found that the shipment of NJP products to Allflex NZ for ultimate distribution in the United States constituted a breach of the distribution agreement which then existed between Felton & Co. and NJP.

On December 10, 1993, the court dismissed with prejudice plaintiff Phillips USA's claims against NJP in the 1992 Kansas action. On plaintiff's motion, the court dismissed without prejudice plaintiff's claims against Allflex USA, Allflex NZ and Allflex SA. However, upon reconsideration of that order the court vacated its prior order, granted plaintiff a dismissal without prejudice, but attached certain stringent conditions. *Phillips USA, Inc. v. Allflex USA, Inc.*, No. 92–2405–JWL, 1994 WL 171709 (D.Kan. Apr. 15, 1994). The court ordered that due to Phillips USA's refiling of its action against Allflex USA, two motions by Allflex USA for Rule 37 sanctions, seeking dismissal of all claims as an appropriate sanction in the 1992 action (Docs. # 185 and # 194 in the 1992 action), would be automatically revived and considered as pending in the new case. Allflex USA's Motion to Dismiss for Failure to Prosecute and Failure to Comply With Discovery Orders (Doc. # 13) and its Motion to Compel Response to Third Request for Production of Documents From Allflex USA and for Dismissal and Other Sanctions (Doc. # 14) have been revived and are deemed pending in this action.

While discovery disputes in this action have been presented directly to the district judge, Magistrate Judge Gerald Rushfelt managed and presided over the discovery phase of the 1992 Kansas action. Considering that certain of Allflex USA's motions now pending in this case seek dismissal due as a result of alleged discovery abuses on the part of plaintiff Phillips USA in the 1992 action, a report and recommendation was sought from Magistrate Judge Rushfelt on those motions. Also at issue in the motions is the consequence, if any, of Phillips USA's failure to obey certain orders of the magistrate. Magistrate Judge Rushfelt issued his report and recommendation on June 21, 1994, advising the district court to dismiss all of Phillips USA's claims against Allflex USA. Both plaintiff and defendant have had an opportunity to object or respond to the report and have made several filings along those lines.

Another condition attached to the judgment in the 1992 action was that the refiled action be set for trial on a schedule commensurate with it being litigation originally commenced in 1992. As a result of this condition, the timing for the filing of dispositive motions in this action became compressed and many motions are now at issue and pending simultaneously. This order addresses all pending motions in this action.

## II. MAGISTRATE'S REPORT ON ALLFLEX USA's MOTIONS FOR DISMISSAL

Allflex USA seeks to impose the sanction of dismissing all claims of Phillips USA pursuant to Federal Rule of Civil Procedure 37. It contends that Phillips USA has disobeyed several discovery orders, that it has provided only inadequate and belated responses to others, and that it failed to comply with an order and sanction to pay $1000 as directed by the magistrate. After thorough review of defendant's motion and plaintiff's responsive papers, the magistrate concluded that Phillips USA chose a strategy of delay and contempt for the judicial process, that it failed without adequate explanation or excuse to comply with orders of the court directing completion of discovery, and that Phillips USA's conduct amounted to willful and not simply involuntary noncompliance with court orders. The report concluded that Allflex USA's motion for dismissal as a sanction should be granted. Plaintiff has since filed objections to the report and Allflex USA has responded.

■ The court must make a de novo review of any portion of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b)(1). The court may accept, reject, or modify the recommendation, or refer the matter back to the magistrate judge with additional instructions. 28 U.S.C. § 636(b)(1); *Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976). The court has conducted a de

novo review of Magistrate Judge Rushfelt's report and recommendation, plaintiff's specific objections and the relevant law. Having carefully and thoroughly conducted this review, the court is persuaded that Magistrate Judge Rushfelt's factual determinations were entirely correct and that his conclusions were based upon the proper legal standards. The report and recommendation is, therefore, adopted in its entirety. In addition, the court sets forth its independent reasoning and the basis of its considered judgment that the magistrate's report reaches precisely the correct result, that plaintiff Phillips USA's claims against defendants Allflex USA and Allflex NZ must be dismissed.

Plaintiff Phillips USA does not argue that the magistrate has misapprehended the relevant law in its report, nor does it object to the majority of the proposed findings. Instead, plaintiff takes issue with three specific findings made. It argues that the magistrate incorrectly determined that Phillips USA: (1) failed to comply with a June 8, 1993 order to supplement answers to interrogatories; (2) failed to produce documents ordered produced on August 19, 1993; and (3) failed to pay a $1000 sanction imposed by the court. Phillips USA contends that dismissal is inappropriate because it complied with the magistrate's orders in that: (1) the June 8, 1993 order to supplement interrogatories became moot, rendering compliance unnecessary; (2) plaintiff produced documents ordered on August 19, 1993 as soon as it refiled its action in January of 1994; and (3) plaintiff paid the $1000 sanction.

■ Plaintiff's objections do not persuade the court that the sanction of dismissal is inappropriate. Rather, plaintiff's incomplete and evasive explanation for its failure to comply with certain orders further persuades the court that plaintiff has willfully ignored the magistrate's orders and made tactical decisions to delay or totally avoid compliance such that dismissal is the only appropriate measure of relief for defendant Allflex USA.

Plaintiff first contends that it did not answer or produce documents on June 28, 1993, as ordered, because Count VI of the second amended complaint was dismissed with prejudice and without opposition from plaintiffs.

It argues that as a result of the dismissal, production of documents relevant to Count VI became unnecessary and the court's order became moot.

Plaintiff neglects to mention certain key facts. Count VI was not dismissed until December 10, 1993. Allflex USA first propounded the set of interrogatories at issue in the June 28 order in October of 1992. After extensions by stipulation and requests and demands by Allflex USA, defendant brought a motion to compel as to five interrogatories and five document requests and for sanctions. The magistrate's June 8, 1993 order granted that motion and ordered plaintiff to produce documents and further answer interrogatories. Plaintiff did neither. On July 27, 1993, Allflex USA brought a motion to dismiss Count VI, the principal, but not sole, subject of inquiry of the requests and interrogatories. During a telephone discovery conference on October 14, 1993, plaintiff's counsel for the first time informed the court that it did not oppose the motion to dismiss. The information sought continues to be relevant in this action, yet plaintiffs continue to object to its discovery.

The above rendition of the circumstances surrounding plaintiff's "compliance" makes clear that there has been no compliance at all, but rather that plaintiff has intentionally ignored a court order because it made its own determination that the order was moot. Plaintiff chose not to comply with or to seek an amendment to the magistrate's order for several months in hopes of avoiding it altogether by dismissing its claims without prejudice. Such actions are improper and support the magistrate's determination that plaintiff has continually chosen a strategy of delay for its own benefit.

Plaintiff next contends that the August 19, 1993 order has been complied with and that efforts to comply began in April of 1994, before the filing of the magistrate's report and recommendation. As defendant points out, however, this response admits that no effort was made to comply with the order in 1993. In addition, Alan Felton, Chief Executive Officer of Felton & Co., has testified that he first requested someone look for monthly financial reports, documents requested by

Allflex, and ordered produced in the August 19 order, in June of 1994. Many documents were not actually produced until July of 1994. The court concurs with defendant that this is rather compelling evidence that plaintiff would have done nothing but for the looming possibility of dismissal or the actual proposed dismissal of its claims.

Finally, plaintiff argues that it paid the $1000 sanction and submits that had Judge Rushfelt known that the sanction was paid, he would have concluded that dismissal was not warranted. Once again, however, plaintiff's statement and argument that it complied with an order is only a partial truth. Judge Rushfelt's July 1, 1993 order had three parts: (1) payment of a $1000 sanction; (2) filing a receipt or certificate of payment; and (3) doing both by July 20, 1993. Plaintiff chose to ignore the order for months. After it moved on October 9, 1993 for a voluntary dismissal, plaintiff paid the $1000. Plaintiff did not, however, file a receipt or a certificate of payment to inform the court on the record that there had been at least partial compliance with the three-month old order.

In a scheduling conference on October 14, 1993, plaintiff's counsel informed the court that it had made no further answers or further produced ordered documents, but that it had paid the sanction. Defense counsel for Allflex USA, however, had not yet received that payment. Defense counsel did eventually receive a check dated October 11, 1994 for $1000. Plaintiff has never explained why it failed to file a certificate of payment, nor even attempted to explain the delay of actual payment of the sanction. While plaintiff may have paid the $1000, it far from complied with Judge Rushfelt's order. Plaintiff's belated, self-serving payment of a court-imposed sanction does not demonstrate a good-faith attempt to work with the judicial process and only evidences plaintiff's continued attempt to interfere with it.

Allflex USA has been severely prejudiced by plaintiff's persistent delay tactics. In addition to the business interruption, time and expense incurred from protracted litigation, defendants have also been deprived of an adequate opportunity to present a defense. Plaintiff no longer employs certain key witnesses and maintains it cannot compel their attendance at a deposition. Documents withheld until recently disclose the importance of witnesses whose documents and depositions cannot now be obtained without resort to the court. Plaintiff's failure to conduct discovery in a responsible manner has necessitated a further postponement of the trial date. In addition, defendant has been prejudiced in its ability to prepare a summary judgment motion, for it has been forced to either prepare one without key documents or to seek an extension of time causing further delay in the resolution of this matter. Further delay appears to be the precise result sought by plaintiff, for it is plaintiff's remarkable position in its response to defendant's summary judgment motion that it needs additional time for discovery, despite having begun this litigation more than two years ago, in order to properly support its claim.

It is apparent to the court that lesser sanctions will not suffice to deter plaintiff from employing dilatory tactics in the future. Plaintiff has yet to conduct discovery in this action in a responsible manner. More importantly, plaintiff has yet to admit that it has neglected to conduct the litigation of its claims in a fair and efficient manner and has never attempted to show that its conduct is excusable. Instead, plaintiff continually tries to persuade the court that its own view as to when and how orders might or should be complied with, which is of course in conflict with this court's pronouncements, are legitimate and made in good faith.[1] In so doing plaintiff further informs the court that it

---

1. As was well stated by the magistrate, "The response of Phillips to the motions enlightens the court less for what it says than for what it does not say." Report and Recommendation at p. 3. Plaintiff has at times in this litigation, if not lied, propounded half truths to this court which become apparent only when defendants spend the time and energy, and incur the costs, of bringing the real facts before the court. This persistent evasiveness has caused many, if not most, of the problems of effecting a fair administration of justice in this action. As evidenced by plaintiff's response to the magistrate's report, this conduct has not stopped. Plaintiff has in a sense flouted the court's authority by not candidly explaining the circumstances of its continued failure to conduct this action appropriately.

does not fully respect the judicial process and the rules of procedure. Prior sanctions have been ineffective and any sanction other than dismissal would not deter plaintiff from repeating such delay tactics in the future.[2]

The court has already found it erred in allowing plaintiff Phillips USA to dismiss its claims without prejudice and without conditions in the 1992 action. *See Phillips USA, Inc. v. Allflex USA, Inc.,* No. 92–9405–JWL, 1994 WL 171709, at *3–5 (D.Kan. Apr. 15, 1994). In originally granting plaintiff's motion to voluntarily dismiss without prejudice, the court had assessed that many of plaintiff's problems in carrying out properly the litigation of its claims stemmed from the inexperience of counsel in bringing this type of lawsuit. The court misapprehended the situation and did not fully appreciate the willfulness of plaintiff's conduct.

Plaintiff took advantage of a system which split control over the action between two judges, i.e., the judge deciding the dispositive motions was not the same individual deciding discovery issues in the 1992 action. Plaintiff knowingly took advantage of the fact that authority was split and there was a significant time lag in the communication between the magistrate and judge. Plaintiff played on the system and actively tried to conceal facts from coming before the court, if at all, in an expedient manner.

The court erred in not recognizing previously how egregious plaintiff's conduct has been. The court is persuaded that the *Erenhaus* factors, as set out in the magistrate's report, weigh in favor of imposing dismissal as a sanction. The aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits. The circumstances here are so extreme as to warrant so severe a sanction. A lesser sanction would not serve the interest of justice.

Thus, the court dismisses the action of Phillips USA against Allflex USA with prejudice.

## III. ALLFLEX NZ AND ALLFLEX SA's SUMMARY JUDGMENT MOTION

In Count I of their complaint, Phillips USA and Felton & Co. allege that Allflex NZ and Allflex SA interfered with plaintiffs' contractual relationship with NJP. In Count IV, they allege that Allflex NZ and Allflex SA conspired to induce Allflex USA to breach its contract with Phillips USA and to breach a fiduciary duty owed to Phillips USA. And in Count V, plaintiffs allege that Allflex NZ and Allflex SA tortiously interfered with plaintiff Phillips USA's contractual relationship with Allflex USA. In each of the counts, plaintiffs allege that the defendants acted maliciously, entitling plaintiffs to punitive damages. Allflex NZ and Allflex SA move for summary judgment on all three counts arguing that the uncontroverted facts indicate that the claims are all barred by the Kansas statutes of limitations. The court agrees.

### A. Uncontroverted Facts

Plaintiff Felton & Co. entered into an agreement with NJP in January of 1989 to distribute NJP products in, among other places, the United States ("Felton & Co./NJP contract"). In roughly October of 1989, Phillips USA appointed Allflex USA to represent NJP's products in the United States ("Phillips USA/Allflex USA contract"). Phillips USA's agreement with Allflex USA was terminated less than two years later, effective May 1, 1991.

On December 10, 1991, NJP contracted with Allflex NZ for distribution of products in New Zealand, Europe, Canada, Mexico and the United States ("NJP/Allflex NZ contract"). Allflex NZ was to then ship these products to Allflex USA for distribution in the United States. On December 20, 1991,

---

**2.** The court is compelled to point out that the delay tactics which are manifest are not simply a product of the acts of plaintiff's counsel. The court is persuaded that it is the plaintiff itself who has had a substantial hand in the delay. Much of the problem stems from plaintiff's decision to pursue separate litigation in the United States and in Australia simultaneously, even though both suits arise out of all of the same transactions and occurrences. There is ample evidence in the record that this was a tactical and strategic decision on plaintiff's part and, further, that the decision was not motivated solely by a good-faith intent to seek redress for a perceived wrong. Thus, plaintiff's pleas that it has attempted to comply with court orders, but that the demands of two suits has made that most difficult or impossible, falls on deaf ears.

just ten days after the formation of the NJP/Allflex NZ contract, plaintiffs filed their Australian action against NJP for breach of an exclusive distributorship agreement. The plaintiffs did not see the NJP/Allflex NZ contract until March 13, 1992, in the course of discovery in the Australian litigation.

On June 26, 1992, plaintiff Phillips USA filed suit against Allflex NZ, Allflex SA and others in the United States, but, as already mentioned, that action was dismissed on plaintiff's motion. Phillips USA, along with Felton and Co., filed the present action on January 7, 1994. They issued summonses for Allflex SA and Allflex NZ on March 30, 1994, but did not serve process on these defendants until July 13, 1994 and July 14, 1994 respectively.

### B. Legal Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado*, 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States*, 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91

L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### C. Analysis

#### 1. Count I

■ The parties agree that K.S.A. § 60–513(a)(4), which provides for a two-year limitations period for tort actions, applies to all of plaintiffs' claims against the moving defendants, including Count I for tortious interference with plaintiffs' contractual relations with NJP.[3] *Chavez v. Saums*, 1 Kan.App.2d 564, 567, 571 P.2d 62, 65 (1977); *Yeager v. National Coop. Refinery Ass'n*, 205 Kan. 504, 507, 470 P.2d 797 (1970); *see also Tomson v. Stephan*, 696 F.Supp. 1407, 1414 (D.Kan. 1988). For a claim to be timely filed under the two-year statute, it must be brought within two years following the date the cause of action accrued.

A cause of action covered under K.S.A. 60–513(a)(4) shall not be deemed to have accrued "until the act giving rise to the cause of action first causes substantial injury, or until the time of the fact of injury (inferentially, the fact of substantial injury) becomes reasonably ascertainable to the injured party." *Olson v. State Highway Comm'n of Kansas*, 235 Kan. 20, 26, 679 P.2d 167, 172–73 (1984); K.S.A. 60–513(b). The "fact" of injury has

---

**3.** In diversity actions, the state statute of limitations must apply. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109–12, 65 S.Ct. 1464, 1470–71, 89 L.Ed. 2079 (1945). A federal court sitting in diversity is also bound to apply the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pursuant to Kansas' conflict of laws rules, the rule of lex loci delicti is to be applied. *Brown v. Kleen Kut Mfg., Co.*, 238 Kan. 642, 644–45, 714 P.2d 942, 944–45

(1986). In other words, the place of the wrong determines the right to recover. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). Generally, where the wrong occurred is considered to be the place where the injury was suffered. *Id.* Because the plaintiffs allege that they were injured in the state of Kansas, Kansas law applies here. Under Kansas law, *lex fori*, the law of the forum, governs the determination of the statute of limitations. *Menne v. Celotex Corp.*, 722 F.Supp. 662, 663 (D.Kan.1989).

been interpreted to include the cause of a known or reasonably ascertainable injury. *City of Wichita, Kan. v. U.S. Gypsum Co.*, 828 F.Supp. 851, 864 n. 11 (D.Kan.1993) (citing *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 322, 820 P.2d 390, 400 (1991)). Courts have found that it is not only the injury, but also the wrongful act giving rise to the injury that must be reasonably ascertainable before the cause of action accrues. *Comeau v. Rupp*, 810 F.Supp. 1127, 1145 (D.Kan.1992) (citing *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855, syl. ¶ 1 (1984); *Federal Deposit Ins. Co. v. Ashley*, 754 F.Supp. 179, 183 (D.Kan. 1990)). In order to prevail on their summary judgment motion, defendants must show, as a matter of law, that there is an absence of evidence to support the plaintiffs' claim that the fact of injury from the alleged tortious interference could not reasonably be ascertained by plaintiffs more than two years before January 7, 1994, when this action was filed. *See Uhock v. Sleitweiler*, 13 Kan. App.2d 621, 623, 778 P.2d 359, 361 (1988) (when evidence is disputed as to when substantial injury becomes reasonably ascertainable, the issue must be determined by the trier of fact).

■ The gravamen of plaintiffs' complaint is that the tortious interference of the Allflex group of companies caused NJP to breach its agreement with Felton & Co., causing plaintiff severe injury. NJP's breach and the alleged interference of the Allflex companies gave rise to the same injuries or damages to plaintiffs. The same acts and events giving rise to NJP's breach of contract substantially form the basis of plaintiffs' tortious interference claim against Allflex NZ and SA. Thus, once plaintiffs ascertained, or could reasonably have ascertained injury from NJP's breach of contract, it was at that moment also reasonably ascertainable that the company distributing NJP products was interfering with plaintiffs' contractual relations with NJP. Thus, under the circumstances of this case, plaintiffs' cause of action for tortious interference began to accrue at the same time, or no later than, its cause of action accrued for breach of the NJP/Felton & Co. contract.

■ Defendants have produced evidence to indicate that plaintiffs suffered injuries in 1991 due to NJP's breach of contract and allegedly due to defendants' interference with the Phillips USA/NJP contract. Defendants point to Mr. Felton's testimony in his deposition that Phillips USA experienced lost sales in 1991.[4] Def.Mem. in Sup.Mot. for Sum.J. Ex. D. It is clear that plaintiffs recognized these injuries and reasonably believed that these injuries were caused, at least in part, by NJP's conduct in using an additional means (other than Phillips USA) to distribute its products in the United States. Plaintiffs filed a lawsuit on that basis in December of 1991. Thus, the court finds that plaintiffs could have reasonably ascertained injury stemming from defendants' alleged tortious interference in December of 1991 and that their cause of action began to accrue at that time.

■ Plaintiffs argue, however, that simply being aware of NJP's breach does not make the tortious interference of Allflex NZ and Allflex SA reasonably ascertainable. They contend that injuries due to the moving defendants' tortious interference could not have been reasonably ascertained until March of 1992 when plaintiffs actually saw the Allflex NZ/NJP contract. The court understands plaintiffs to argue that the specific acts of Allflex NZ and Allflex SA which constitute the claim of tortious interference could not be reasonably ascertained until sometime after January of 1992. Even if the court accepts plaintiffs' framing of the issue,[5]

---

4. Only the fact of a substantial injury, not its extent, must be reasonably ascertainable to the injured party. *Brueck v. Krings*, 230 Kan. 466, 470–71, 638 P.2d 904, 907–08 (1982). An injury is "substantial" within the meaning of the statute if the victim has "sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." *City of Wichita, Kan. v. U.S. Gypsum Co.*, 828 F.Supp. 851, 854 (D.Kan. 1993) (citing *Roe v. Diefendorf*, 236 Kan. 218,

222, 689 P.2d 855, 859 (1984)). There can be no dispute that plaintiffs had incurred a "sufficient ascertainable injury" as of December 20, 1991 when they filed what was ultimately a successful lawsuit for such injuries in Australia.

5. Although unclear, plaintiffs may be arguing that: (1) all of the actors whose conduct gives rise to their claim were not known or identified in December of 1991; or (2) that all of the

summary judgment remains appropriate because plaintiffs have not shown that a genuine issue of fact exists for trial.

Accepting plaintiffs' initial proposition, that the involvement of Allflex SA and Allflex NZ must have been reasonably ascertainable to start the running of the limitations period, the key issue then becomes when did the "wrongful acts" of Allflex NZ and SA become reasonably ascertainable to plaintiffs. Defendants have produced evidence that plaintiffs were actually aware and genuinely believed in 1991 that the Allflex group of companies were responsible for plaintiffs' injuries and that the tortious interference with contract was one theory upon which plaintiffs could bring a lawsuit. Defendants proffer an October 8, 1991 letter addressed to Mr. David Warren, President of Allflex USA, from Thomas Re & Partners, then general counsel to Felton & Co. and Phillips USA, stating the following:

> ... Based on information before us, we are of the opinion that Allflex is, in fact, in breach of its contractual obligations to our client, including specifically breach of its duty not to disclose confidential information, nor compete with our client.

> We understand Allflex to have taken unfair advantage of information learned by it during the course of its services under contract with our client and to have used such information to circumvent exclusive business relationships our client has with N.J. Phillips Pty. Ltd. and also certain U.S. distributors, thereby engaging in improper business and trading conduct.

> The results are that we have been instructed to pursue a lawsuit against your company and attendant additional individual parties in the United States based additionally on "unfair business practices" which, you may know, includes the award

of attorney's fees and tortious interference with contract.

> Our client has now been significantly and irreparably damaged by such actions and, accordingly, we have been instructed to take any and all steps necessary to protect their legal interest. As you may know, these steps are being taken in conjunction with Mr. Felton's solicitors and barristers in Australia, who are presently lodging a writ against N.J. Phillips.

Defendants' Mem. in Sup.Mot. for Sum.J. Ex. D. Defendants have also submitted a fax transmission dated October 20, 1991 with the handwritten notes of Alan Felton indicating that his New York attorneys were ready to begin the United States lawsuit, but that they would delay the filing for a time.

In response, plaintiffs offer nothing but the fact that they did not actually see the NJP/Allflex NZ contract until March of 1992. This is simply insufficient to meet their burden upon summary judgment. It is not necessary for plaintiffs to have seen the contract "in person" to start the running of the statute of limitations. With this being the only evidence attempting to controvert the reasonable inferences drawn from the evidence produced by defendants, the court can do nothing other than find that there is no genuine dispute of fact, and that the "fact of substantial injury" to plaintiffs was, under any theory, reasonably ascertainable at least by December of 1991. Thus, plaintiffs' cause of action accrued more than two years before plaintiffs filed their action in this case.

■ Plaintiffs' second argument is that even if they could have ascertained substantial injury in 1991, defendants' tortious interference was a continuing tort such that their cause of action did not begin to accrue until the wrongful conduct ceased. Plaintiffs cite no authority for the proposition that Kansas would recognize the conduct at issue here as

theories giving rise to liability were not reasonably ascertainable. Not only does the law not support relief based on either argument, but the facts are contrary to such claims as well. There is ample evidence that plaintiffs were aware of substantial injury in 1991 and that the injury was caused by another distributor representing NJP

products in the United States. Moreover, the court believes plaintiffs to argue in bad faith that they did not actually know of the involvement, at least in general terms, of the Allflex group companies. The evidence is clear that they had some knowledge of the involvement of the Allflex

a continuing tort.[6] Defendants contend that Kansas does not recognize a continuing-tort theory for actions where the basis of the claim is the confidential or contractual relationship between the parties, citing *Lockridge v. Tweco Prods., Inc.*, 209 Kan. 389, 394, 497 P.2d 131, 135–36 (1972). While the *Lockridge* opinion does not indicate that Kansas would *never* recognize a continuing tort where the basis of the claim is a contractual relationship between parties, the court does find its reasoning to be determinative of the issues presented here, and finds that the alleged tortious conduct of the defendants was not a continuing wrong for which the statute of limitations would be tolled.

In *Lockridge*, the issue before the Kansas Supreme Court was whether a single cause of action arises, commencing the statute of limitation, when a trade secret is first misappropriated, disclosed and used, or whether each use is a new tort giving rise to a new cause of action with its own period of limitations (a continuing tort). 209 Kan at 397, 497 P.2d at 137. The Court looked to the nature of the injury to determine whether it was continuing and found that the first wrongful use of the trade secret at issue destroyed the value of the secret forever. *Id.* It concluded that the nature of the injury made it a "fixed, palpable, ascertainable and nonrecurring event." *Id.*

Under the circumstances of this case, the moving defendants' interference was a fixed and ascertainable event. As already stated, the thrust of plaintiffs' claim is that when Allflex NZ contracted with NJP, the Allflex group companies tortiously interfered with Felton & Co.'s contract with NJP. Any contacts, negotiations, etc. concerning the NJP/Allflex NZ contract may be wrongful

acts which together amount to tortious interference. However, once the NJP/Allflex NZ contract was signed on December 10, 1991, the injury was complete. The alleged tortious interference became fixed and ascertainable no later than that date.

Plaintiffs, in response, argue only that the moving defendants' conduct must be considered a continuing tort because "each time N.J. Phillips products from N.J. Phillips were shipped to Allflex New Zealand for reshipment to Allflex USA for resale in the United States and Canadian market, plaintiffs suffered damages as a result of such tortious interference with the William Felton & Company—N.J. Phillips contract." They have produced evidence indicating that NJP continued to ship products to Allflex NZ and Allflex USA well into 1992 and 1993.

The fact that plaintiffs continued to suffer damages for a long period of time, however, does not mean that the tort is a continuing one for purposes of the statute of limitations. As *Lockridge* instructs, the court must look to the nature of the injury, not the damages flowing therefrom. 209 Kan at 397, 497 P.2d at 137. "The accrual date [for the statute of limitations] does not change on the theory that the alleged misconduct created continuing consequential damages." *Quintana v. Wiener*, 717 F.Supp. 77, 80 (S.D.N.Y.1989); *Piracci Constr. Co. v. Skidmore, Owings & Merrill*, 490 F.Supp. 314, 321 (S.D.N.Y.1980) (citations omitted), *aff'd*, 646 F.2d 562 (2d Cir.1981).

The court finds that, if faced with the issue, Kansas courts would not hold that the conduct of the moving defendants here amounts to a continuing tort. Plaintiffs claim is, therefore, barred by the statute of limitations.[7]

---

group: the extent of that involvement is what remains in dispute.

**6.** The court has found no Kansas case addressing whether tortious interference with contract may be recognized as a continuing tort under Kansas law. The court has, however, found two cases which have deemed tortious interference with contract a continuing wrong under Kansas law. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 723 F.Supp. 567, 569 (D.Kan.1989); *Garrett v. American Family Mut. Ins. Co.*, 520 S.W.2d 102, 119 (Mo.Ct.App.1974). Neither case, however,

analyzes the issue in any depth, and the court does not believe either one helpful in determining whether, under the facts here, the moving defendants' conduct constitutes continuing wrongful conduct tolling the statute of limitations.

**7.** Defendants also point out, and produce evidence in support, that plaintiffs may not benefit from the Kansas "savings statute," K.S.A. § 60–518, because they did not "commence" this action within the time allotted. Plaintiffs do not contest this point. Thus, they are deemed to

### 2. Counts IV and V

In Count IV, Phillips USA and Felton & Co. allege that Allflex NZ and Allflex SA conspired with Allflex USA to breach Allflex USA's contract with Phillips USA and to breach a fiduciary duty owed to Phillips USA. In Count V, they allege that the moving defendants tortiously interfered with the contractual relationship between Phillips USA and Allflex USA. Defendants contend, and have produced evidence to indicate, that these claims are barred by the two-year limitations period because any action alleged in Count IV must have been commenced before May 1, 1993 and was not.

 Plaintiffs do not deny anywhere in their papers that these claims are barred by the statute of limitations. Plaintiffs are deemed to concur in defendants' assessment of the lack of validity of their claims. It is uncontroverted that Phillips USA terminated its contract with Allflex USA effective May 1, 1991. Any claim for breach of fiduciary duty arising under that contract would begin to accrue no later than May 1, 1991. *See All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F.Supp. 858, 861 (D.Kan.1994) (the mutual obligations of the parties terminate on the date the contract expires, unless the parties otherwise expressly provide in the contract); *see also Cornett v. Roth*, 233 Kan. 936, 940, 666 P.2d 1182, 1186 (1983).[8] Any claim for tortious interference with Phillips USA/Allflex USA contract would also begin to accrue no later than the date on which that contract was terminated. Even if the injury could not be reasonably ascertained immediately, as the court has already found, substantial injury was actually ascertained by plaintiffs no later than December of 1991.

Thus, plaintiffs have again failed to meet their burden to set forth specific facts showing that there is a genuine dispute for trial. Defendants' motion for summary judgment on Counts IV and V is granted.

## IV. ALLFLEX USA's SUMMARY JUDGMENT MOTION

All of Phillips USA's claims against Allflex USA have now been dismissed. The dismissal of these claims moots Allflex USA's summary judgment motion on them and leaves for decision only those claims against Allflex USA brought by Felton & Co. Felton & Co. claims in Count I of the complaint that Allflex USA tortiously interfered with plaintiff's contractual and business relationship with NJP and in Count II that this tortious interference amounts to a breach of the Phillips USA/Allflex USA contract and a breach of a fiduciary duty arising from that contract.[9] Allflex USA contends that both claims are barred by the statutes of limitation.

Felton & Co. did not file suit against Allflex USA until January 7, 1994. For some unexplained reason, Felton & Co. was not a named plaintiff in the 1992 Kansas action.[10] Accordingly, there is no basis to conclude that the Kansas "savings statute" applies to 'save' Felton & Co.'s claims here, and, indeed, plaintiff does not make that argument. The issue to be resolved is whether Felton & Co.'s tortious interference claim gave rise to an ascertainable injury prior to January 7, 1992, two years before this action was filed, and, if so, whether the tort may be considered a continuing one such that it would toll the limitations period.

---

have waived any theory that their claims are permitted pursuant to the Kansas savings statute.

8. In *Cornett*, the Kansas Supreme Court approved a trial court's finding that a claim for a breach of fiduciary duty was barred by the two-year statute of limitations where the claim arose out of negotiations on a contract entered into more than two years before. 233 Kan. at 940–41, 666 P.2d at 1186–87. The court found that any alleged breach of a duty was ascertainable at the time the contract was entered into and was not extended by the fact that damages were incurred three years after the formation of the agreement. *Id.*

9. Count III of the complaint was voluntarily dismissed by plaintiffs. Count VII, the only other count naming Allflex USA, was dismissed with prejudice by the court in its September 16, 1994 order. *See Phillips USA, Inc. v. Allflex USA, Inc.*, No. 94–2012–JWL, 1994 WL 544352, at *1 (D.Kan. Sept. 16, 1994).

10. The only evidence in the case indicates that the conspicuous absence of Felton & Co. from the first United States action was a tactical decision on the part of plaintiffs.

The analysis set forth with respect to the claims against Allflex NZ and Allflex SA applies equally to Felton & Co.'s claims against Allflex USA. As already stated, plaintiffs' United States attorneys' letter dated October 8, 1991 announcing that they were authorized to initiate a lawsuit against Allflex USA and stating that plaintiffs had already been "significantly and irreparably damaged" is uncontroverted evidence, not only that plaintiffs could have reasonably ascertained the fact of substantial injury by December of 1991, but that they had actually so ascertained.

Felton & Co.'s objection to Allflex USA's conduct is that it induced NJP to breach its contract with plaintiff, i.e., the injury to Felton & Co. is the deprivation of the benefits it was entitled to under its exclusive contract with NJP. The alleged acts of interference occurred in 1991 when Allflex NZ and NJP entered into a distribution contract pushing Phillips USA out of the picture. The performance of that contract began in 1991 when NJP shipped goods to Allflex NZ, which shipped them on to Allflex USA.

Given the nature of the injury claimed is damage to Felton & Co.'s rights to the enjoyment of its contract with NJP, then it is clear that Felton & Co. suffered ascertainable injury no later than the date of Felton & Co.'s filing of a statement of claim in Australia alleging a fundamental breach of contract which plaintiffs contend was induced by Allflex USA and others. That suit being initiated on December 20, 1991 makes the commencement of the present action too late and barred by the statute of limitations. Allflex USA's motion for summary judgment on Felton & Co.'s claims against it is granted.

## V. CONCLUSION

Due to the fact that all claims brought by plaintiffs have now been dismissed, the court believes that the motions pertaining to discovery are moot. The court realizes that Allflex USA's counterclaims remain [11] and that some discovery issues will need to be revisited. Because the procedural posture of the case has changed so dramatically, however, it will be the parties' responsibility to renew any discovery motions which again become pertinent. The court hereby schedules a telephone status conference for November 28, 1994 at 10:30 a.m. to determine what counterclaims remain and what schedule should be in place to process them.

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion of Allflex USA, Inc. to Dismiss for Failure to Prosecute and Failure to Comply With Discovery Orders and to Dismiss Unserved Allflex Defendants (Doc. # 13) is granted.

**IT IS FURTHER ORDERED** that the Motion of Allflex USA to Compel Response to Third Request for Production of Documents From Allflex USA and for Dismissal and Other Sanctions (Doc. # 14) is granted.

**IT IS FURTHER ORDERED** that the Motion of Allflex S.A. to Dismiss for Lack of Personal Jurisdiction and for Failure to Prosecute (Doc. # 101) is denied as moot.

**IT IS FURTHER ORDERED** that the Motion of Allflex NZ to Dismiss for Lack of Personal Jurisdiction and Failure to Prosecute and for a More Definite Statement (Doc. # 132) is denied as moot.

**IT IS FURTHER ORDERED** that the Motion of Allflex NZ and Allflex SA for Summary Judgment on all Claims (Doc. # 143) is granted.

**IT IS FURTHER ORDERED** that the Motion of Allflex USA for Summary Judgment on the Remaining Counts of the Complaint (Doc. # 146) is granted.

**IT IS FURTHER ORDERED** that the Request of Defendants for Oral Argument on the Motions (Doc. # 160) is denied.

**IT IS FURTHER ORDERED** that the Motion of William Felton & Co., et al. for Supplemental Order for Determination Under Fed.R.Civ.Pro. 54(b) (Doc. # 202) is denied.

**IT IS FURTHER ORDERED** that the Motion of William Felton & Co., et al. to Amend the Court's Scheduling Order (Doc. # 156), the Motion of William Felton & Co.,

---

11. It appears that at least some of these counterclaims are rendered moot by this order and the court expects the counterclaimant to dismiss those which are.

et al. for Leave to Take the Deposition of Robert Yates Out of Time (Doc. # 158), the Motion of William Felton & Co., et al. to Extend Time to File Expert Report (Doc. # 162), the Motion of William Felton & Co., et al. for Leave to Take the Depositions of Robert Myles Abrahams and Anthony Burrell (Doc. # 172), the Motion of William Felton & Co., et al. to Compel Allflex USA to Produce Documents requested in Plaintiffs' Request for Production (Doc. # 175) and the Motion of William Felton & Co. et al. for Order Granting Relief From Protective Order (Doc. # 181) are all denied as moot.

**IT IS FURTHER ORDERED** that there shall be a telephone status conference held in this case on November 28, 1994 at 10:30 o'clock a.m.

**IT IS SO ORDERED.**

### SUPPLEMENTAL MEMORANDUM AND ORDER

On November 2, 1994, this court issued an order in this case dismissing all of the claims of plaintiff Phillips USA, Inc. ("Phillips USA") against Allflex USA, Inc. ("Allflex USA"); granting summary judgment in favor of Allflex USA on all of the claims of plaintiff William Felton & Company Pty., Ltd. ("Felton & Co."); and granting summary judgment in favor of Allflex New Zealand, Ltd. and Allflex S.A. on the claims of both Phillips USA and Felton & Co. At a telephone status conference held on November 28, 1994, the court informed plaintiffs and Allflex USA that it would issue a supplemental order clarifying, but not altering, certain of its previous rulings. The court stated it would supplement its November 2 order specifically with respect to the claims of Felton & Co. against Allflex USA in Count II of the complaint. Accordingly, this order explains in detail the court's reasoning in granting summary judgment in favor of Allflex USA on that count.

In Count II of the complaint, Felton & Co. alleges that Allflex USA's tortious interference with plaintiff's contractual and business relations with N.J. Phillips Pty., Ltd. ("NJP") amounted to a breach of the contract between Phillips USA and Allflex USA ("Phillips USA/Allflex USA contract") and a breach of a fiduciary duty arising from that contract. Felton & Co. is not a party to the Phillips USA/Allflex USA agreement. Thus, in order to recover on its claims in Count II, Felton & Co. must show that it is a third-party beneficiary of that agreement.

Because the Phillips USA/Allflex USA contract provides for the resolution of disputes in accordance with the law of the state of New York, the court will apply the law of that jurisdiction here.[1] Under New York law, a third party purporting to have certain rights under a contract may recover by showing: (1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for its benefit; and (3) that the benefit to it is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate if the benefit is lost. *Worldwide Sugar Co. v. Royal Bank of Canada*, 609 F.Supp. 19, 23–24 (S.D.N.Y.), *aff'd*, 751 F.2d 373 (2d Cir.1984); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 722, 451 N.E.2d 459, 469 (1983). A third party must show that it is an "intended" beneficiary of the contract and not merely an "incidental" one.

In attempting to distinguish between intended third-party beneficiaries and incidental ones, New York courts look to the Restatement (Second) of Contracts for guidance. *Goodridge v. Harvey Group, Inc.*, 778 F.Supp. 115, 134 (S.D.N.Y.1991).[2] "Essential

---

1. Plaintiff does not seem to dispute that New York law is applicable to the issues presented. The court finds, however, that Kansas law is substantially similar to New York law as it relates to plaintiff's claims in Count II and the end result would in any event be the same if the court applied Kansas law.

2. The Restatement (Second) of Contracts § 302 (1981) provides:
 (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

to status as an intended beneficiary" under the Restatement is either that "performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary or that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co.,* 771 F.Supp. 600, 604 (S.D.N.Y.1991). It is not enough that performance of the contract benefit the third party, rather the "benefit must be the direct result of performance and so within the contemplation of the parties." *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 399 F.2d 289, 292 (2d Cir.1968). "It is essential not merely that the contract shall operate for the benefit of the third person, but that it shall have been so intended." *Id.*

Allflex USA points out that in the Allflex USA/Phillips USA agreement, William Felton & Co. is not named nor referred to in any way. It points out that there is no provision in the contract from which one might infer an intent to benefit William Felton & Co. In response, plaintiff does not dispute that the contract makes no mention of William Felton & Co., but instead argues only that: "It is absolutely clear that William Felton & Company *must* be an intended beneficiary of the Phillips USA–Allflex USA contract as all N.J. Phillips' goods received from Phillips USA were purchased by Phillips USA from William Felton & Company as William Felton & Company possessed the exclusive right to distribute N.J. Phillips' goods in the United States and Canada."

 Plaintiff has not met its burden to set forth specific facts showing that there is a genuine issue for trial with respect to whether Felton & Co. is a third-party beneficiary of the Phillips USA/Allflex USA contract. The court can discern no intent to benefit Felton & Co. in the Phillips USA/Allflex USA agreement. *See Hylte Bruks Aktiebolag,* 399 F.2d at 292 ("The agreement under which the third party claims must clearly express an intention to assume a direct duty to him."); *BIB Constr. Co. v. City of Poughkeepsie,* 204 A.D.2d 947, 612 N.Y.S.2d 283, 284–85 (1994) (plaintiff was not a third-party beneficiary where there was nothing in the contract between the parties to indicate that the contract was made and intended for plaintiff's benefit). There is no language in the contract from which one could infer that the parties intended that Felton & Co. have a right to recover if defendant breached the contract or breached a fiduciary duty arising under the contract. *See Oursler v. Women's Interart Ctr.,* 170 A.D.2d 407, 566 N.Y.S.2d 295, 296–7 (1991) (language of the contract must clearly evidence an intent to permit enforcement by the third party). Absent an intent on the part of the contracting parties to specifically benefit Felton & Co., Felton & Co. is only an incidental beneficiary of the agreement and may not recover thereon.

 Plaintiff's bald statement, that the obvious benefit to Felton & Co. as the exclusive distributor of NJP products clearly evidences an intent to benefit that company, is simply insufficient to meet its burden on summary judgment.[3] It does not follow automatically from the mere fact that Felton & Co. would benefit from the distribution of goods by Phillips USA, even if that benefit was apparent and known to the contracting parties at the time of the agreement, that the parties intended Felton & Co. have a legal right to enforce the agreement in the event of a breach of a duty established thereunder.[4] *See Oursler,* 566 N.Y.S.2d at 296 (a conven-

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

3. Plaintiff points to no circumstances, other than the existence of a distributor/subdistributor relation between Felton & Co. and Phillips USA, to establish its alleged third-party beneficiary sta-

tus. This relationship is alone insufficient evidence that the contracting parties intended to benefit Felton & Co. where the agreement itself does not remotely evidence such an intent.

4. *See* Restatement (Second) of Contracts § 302 cmt. e (performance of a contract will often benefit a third person, but unless the third person is an intended beneficiary, no duty to him is created) and ill. 17 ("B contracts with A to buy a new car manufactured by C. C is an incidental beneficiary, even though the promise can only be performed if money is paid to C.").

tional business relationship, without more, was insufficient to establish the existence of a fiduciary duty owed to a third party). The court finds that plaintiff has not presented sufficient evidence that it was an intended beneficiary of the Phillips USA/Allflex USA agreement or that it has any independent right to enforce the agreement.[5] Plaintiff has failed to show that it has any right to recover against Allflex USA for an alleged breach of that agreement or for a breach of a fiduciary duty allegedly arising under the terms of that agreement. Thus, summary judgment is granted in favor of Allflex USA on Felton & Co.'s claim of breach of contract and on its claim of a breach of fiduciary duty.

One last issue should be addressed. In response to Allflex USA's motion for summary judgment, Felton & Co. argued that additional discovery was necessary to show that genuine issues of material fact exist, specifically with respect to its claim of tortious interference with contract.[6] Plaintiff did not take the position that additional discovery would permit it to show that issues of fact exist as to the running of the statute of limitations on the tortious interference and fiduciary breach claims or as to the issue of whether Felton & Co. is a third-party beneficiary of the Phillips USA/Allflex USA contract. Thus, the court need not permit additional discovery for the issues which have been decided in this order and in the November 2 order. Moreover, the court believes plaintiff has had sufficient time and opportunity in which to uncover evidence, if it exist-

ed—and/or that such evidence is within the knowledge or control of the plaintiff—to meet its burden on summary judgment with respect to these narrow issues. The court would not permit additional discovery on these issues even if it were sought.

**IT IS THEREFORE ORDERED BY THE COURT** that this order supplement the court's order of November 2, 1994 and that the rulings announced in that order remain in full force and effect. All claims of William Felton & Co., Pty., Ltd. against Allflex USA are dismissed.

**IT IS SO ORDERED.**

---

**5.** *Cf. Artwear, Inc. v. Hughes,* 202 A.D.2d 76, 615 N.Y.S.2d 689, 692–94 (1994) (The plaintiff sued to recover damages against a defendant corporation arising out of the refusal of the Estate of Andy Warhol to approve plaintiff's products for distribution. The court found that plaintiff, although under an agreement with the defendant corporation to act as defendant's sublicensee, was not a third-party beneficiary of the licensing agreement between the defendant and the Estate of Andy Warhol. The court stated: "While the license agreement specifically authorizes [defendant] to use sublicensees to carry out its contractual duties, the provisions permitting such use are obviously intended to effectuate [defendant's] performance and thereby generate revenues for both [defendant] and the Estate. Any benefit to those selected as [defendant's] sublicensees is an incidental by-product of the agreement."

**6.** Plaintiff states, through an affidavit of its attorney Karl Kuckelman, that discovery will enable it to present facts which indicate the following: Allflex USA induced NJP to raise its prices to Felton & Co.; Allflex USA committed a malicious act to cause NJP to breach its contract with Felton & Co.; Allflex USA's belief that the sale of NJP products was not a breach of the Felton & Co. and NJP contract was not reasonable; Allflex USA informed its sales representatives in 1991 and 1992 to advise customers purchasing NJP products to order directly from Allflex USA and not through Phillips USA; and the prices charged by NJP to Allflex USA and the quantity of product purchased by Allflex USA. Even assuming that plaintiffs discovered this information and presented it to the court, it does not appear that it would significantly affect the rulings made in this order and the November 2 order.