# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TAMMY E. MERGENTHALER )
QUIG, AS ADMINISTRATOR OF )
THE ESTATE OF LAWRENCE E. )
MERGENTHALER, )
                                   )
            Plaintiff, )
                                   )
         v. )         C.A. No. 09C-09-203 MBO
                                   )
TRIUMPH MORTGAGE CORP., )
                                   )
            Defendant. )

## ORDER

## I.    BACKGROUND

In 2007, Plaintiff loaned Defendant money through the issuance of two promissory notes. Defendant failed to repay the promissory notes as agreed, and on September 23, 2009, Plaintiff filed a Verified Complaint in this Court to collect the debt, alleging breach of contract and quantum meruit.[1] On or about January 15, 2010, this Court entered a default judgment in Plaintiff's favor pursuant to Superior Court Civil Rule ("Rule") 55.[2] And, for over fifteen years, Plaintiff has attempted to collect the lawful debt owed. This litigation has been contested at every step,

---

[1] Docket Item ("D.I.") 1.
[2] D.I. 4.

1

involved two Delaware Supreme Court appeals, experienced multiple stays, and has been assigned to several judicial officers.[3]

Now pending before this Court is Plaintiff's October 9, 2019 Motion for a Civil Contempt Order under Superior Court Civil Rule 64.1 or, in the Alternative, Motion for the Court to Order Remedies Under 6 *Del. C.* § 1307 for a Fraudulent Transfer by the Defendant Under 6 *Del. C.* § 1304 ("Motion").[4] Plaintiff asserts that "[o]n February 21, 2019, [the] New Castle County Sheriff issued writs of Fieri Facias Attachment regarding two mortgages and the underlying promissory notes and/or loan agreements and a Pledge Agreement" which were "subject credits, good and chattels of the Defendant."[5] Plaintiff further states that "[o]n June 12, 2019, the President of Triumph Mortgage Corporation, Ralph V. Estep, and in its and his capacity as the controlling party of Glasgow Citgo, Inc., caused the property subject to one of mortgages and the Pledge Agreement levied by the Sheriff of New Castle County to be sold to a third-party, Porter Road Enterprises, LLC."[6] Plaintiff alleges Defendant improperly transferred the property to Porter Road Enterprises, LLP ("Porter Road") to frustrate the Sheriff's ability to seize and sell the property, thereby hindering Plaintiff's ability to satisfy the debt.[7]

---

[3] *See* D.I. 204; D.I. 331.
[4] D.I. 276.
[5] *Id.* at ¶ 2.
[6] *Id.* at ¶ 3.
[7] *Id.* at ¶ 1-5.

Plaintiff's Motion seeks alternative remedies – first, Plaintiff requests this Court hold Defendant in civil contempt for fraudulently transferring property subject to a levy and frustrating the execution process. As a sanction, Plaintiff seeks "[a]n Order incarcerating Defendant or its officers under 11 *Del. C.* §1271(3), based on Defendant's violation of 11 *Del. C.* § 893 . . . releasing Triumph or its officers from contempt upon payment to [Plaintiff] of the amount of his judgment against [Defendant], which is in the amount of $276,191.18 as of October 30, 2019 . . .."[8]

Plaintiff also seeks relief through the Delaware Uniform Fraudulent Transfers Act ("DUFTA"), codified in 6 *Del. C.* §§ 1301-1311. Specifically, Plaintiff cites to Section 1307 of DUFTA's equitable remedies which include, but are not limited to, the issuance of an injunction, the appointment of a receiver, the imposition of a constructive trust over proceeds paid to the Ralph V. Estep Irrevocable Family Trust, an accounting of an amount "diverted from the levied mortgage of Triumph to an inside corporate debtor, Triumph," and a "disgorgement of such funds from the current holder to be paid to [Plaintiff]."[9] Plaintiff choose no specific remedy. Instead, Plaintiff's proposed Order broadly authorizes the Court to elect remedies under Section 1307.[10] This non-specific remedy request aligns with Plaintiff's

---

[8] *Id.* p. 8.
[9] *Id.* at ¶ 13-14.
[10] D.I. 276, Proposed Order for Plaintiff's Motion for the Court to Order Remedies under 6 *Del. C.* § 1307 for a Fraudulent Transfer by Defendant Under 6 *Del. C.* § 1304.

intention to reserve the right to seek additional equitable remedies through the Court of Chancery, if the remedies in Superior Court prove inadequate.[11] Plaintiff asserts this Court has jurisdiction to decide the Motion and implement the equitable remedies noted above.[12]

In response, Defendant filed two briefs. First, on October 9, 2019, Defendant filed a Motion to Strike Motion for Civil Contempt Order or Fraudulent Transfer Relief ("Motion to Strike").[13] In the Motion to Strike, Defendant claimed Plaintiff's Motion failed to comply with Superior Court Civil Rules ("Rule") 12(h) and 64.1, as well as the pleading requirements of 6 *Del. C.* §§ 1307-1309.[14] Second, on October 23, 2019, Defendant filed a Response in Opposition to Motion for Civil Contempt for Fraudulent Transfer Remedies.[15] Therein, Defendant argued Plaintiff's Motion for a finding of civil contempt was so "farfetched, unfounded, and bizarre that it should be summarily rejected."[16] Defendant also argued (a) Plaintiff's use of a levy was improper, as mortgages, promissory notes and pledge agreements were not "goods or chattels" subject to levy,[17] and (b) the levy process itself was

---

[11] *Id.* at ¶ 16.
[12] *Id.* at ¶ 15.
[13] D.I. 280.
[14] *Id.*, ¶¶ 1-3. Plaintiff responded to Defendant's motion to strike on October 23, 2019. *See* D.I. 290.
[15] D.I. 287.
[16] D.I. 286, ¶ 2.
[17] *Id.*, ¶ 5.

4

defective/invalid.[18] Finally, Defendant asserted this Court lacked subject matter jurisdiction over Plaintiff's claims, as Plaintiff's request for equitable remedies "are only available in the Court of Chancery, Delaware's exclusive Court of Equity."[19]

Due to Defendant's arguments, this Court directed the parties to address the jurisdictional issue.[20] Briefing was completed in April 2025; thus, this decision resolves the pending motions.

## II. DISCUSSION

### A. CIVIL CONTEMPT

Plaintiff moves this Court to hold Defendant in civil contempt pursuant to Rule 64.1. As to contempt proceedings generally, "Delaware Courts have the inherent power to impose criminal sanctions for contempt,"[21] but "[i]f the primary purpose of the remedy is to coerce compliance with a court's order, then the remedy is civil in character."[22] "To establish civil contempt, [the movant] must demonstrate that the [opponent] violated an order of the court of which they had notice and by

---

[18] *Id.*, ¶ 9.
[19] *Id.*, ¶ 17.
[20] D.I. 367.
[21] *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996).
[22] *City of Wilm. v. Gen. Teamsters Loc. Union 326*, 321 A.3d 123, 125 (Del. 1974).

which they were bound."[23]  The standard of proof in a civil contempt proceeding is by a preponderance of the evidence.[24]

This Court has considerable discretion in holding a party in contempt.[25] The violation "must not be a mere technical one, but must constitute a failure to obey the Court in a meaningful way."[26]  "Even where there has been a violation, the Court will consider good faith efforts to comply with the order or to remedy the consequences of non-compliance."[27]

While civil contempt is generally available to address a party's failure to comply with a court's orders or processes, the remedy of civil contempt is generally not appropriate when, as here, a party is attempting to enforce a monetary judgment. In Delaware, monetary judgments are not resolved through civil contempt findings – they are commonly enforced by writs of execution – the seizure of a debtor's property, the subsequent sale of the property at an execution sale, and the application of the sale proceeds towards the balance of the judgment due.[28]  As Chancellor

---

[23]  *Gandhi-Kapoor v. Hone Capital LLC et al.*, 305 A.3d 707, 720 (Del. Ch. July 19, 2023), (quoting *Handels AG v. Johnston*, 1997 WL 589030, at *3 (Del. Ch. Sept. 17, 1997)).
[24]  *Gandhi-Kapoor*, 305 A.3d at 720, *In re Hurley*, 257 A.3d 1012, 1018 (Del. 2021); *accord TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630, 649 (Del. 2022).
[25] *Gandhi-Kapoor*, 305 A.3d at 720, (citing *Dickerson v. Castle*, 1991 WL 208467, at *3 (Del. Ch. Oct. 15, 1991)).
[26]  *Dickerson,* 1991 WL 208467, at *4.
[27]  *Aveta, Inc. v. Bengoa*, 986 A.2d 1166, 1181 (Del. Ch. 2009).
[28]  *Transcent Mgmt. Consulting, LLC v. Bouri*, 2018 WL 6338996, at *1-2 (Del. Ch. Dec. 4, 2018), (quoting *Biggs v. Strauss*, 1988 WL 55343, at *2 (Del. Super. May 17, 1988)); *also see Vanderzeyde v. RDIS Corp.*, 1996 WL 33167791, at *1 (Del. Ch. June 6, 1996).

William Chandler observed when deciding a DUFTA claim in *Vanderzeyde v. RDIS Corp.*, "I do not think that contempt of court is the appropriate remedy for failure to satisfy a judgment for money. The law supplies execution process for this purpose."[29]

Under these circumstances, Plaintiff's motion for civil contempt will be denied. Delaware courts have long recognized civil contempt is generally an inappropriate remedy for satisfying, as is the case here, a monetary judgment. Plaintiff retains remedies through the DUFTA to address Defendant's principal's alleged behavior.

## B. FRAUDULENT TRANSFER

Plaintiff argues Defendant's principal's conduct violated DUFTA. Section 1304(a) of the DUFTA provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > > a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

[29] *Vanderzeyde*, 1996 WL 33167791, at *1; *also see Ghandi-Kapoor*, 305 A.3d at 712 ("Contempt is not generally available to enforce a money judgment. Instead, the holder of the judgment must resort to collection mechanisms.")

> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

If a court finds a fraudulent transfer occurred, Section 1307 provides for equitable remedies, including:

> (a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in § 1308 of this title, may obtain:
>> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law;
>> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>>> a. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>>> b. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>>> c. Any other relief the circumstances may require.
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.
> (c) Notwithstanding any other provision of law or equity, a creditor shall have no right to relief against any trustee, attorney or other advisor who has not acted in bad faith on account of any transfer. For purposes of this subsection, it shall be presumed that the trustee, attorney or other advisor did not act in bad faith merely by counseling or effecting a transfer.[30]

---

[30] 6 *Del. C.* § 1307.

Plaintiff argues this Court should retain jurisdiction of the DUFTA claim, directing this Court to *USH Ventures v. Global Telesystems, Grp., Inc.*,[31] where former Superior Court Judge William Quillen was "tasked to determine whether certain *equitable defenses* could be applied at law."[32] Ultimately, Judge Quillen observed that "the line between law and equity had never been completely settled," and he identified fraud as an "equitable defense as one example of equitable principals being incorporated into the Superior Court jurisprudence at law."[33] Plaintiff's argument is not persuasive, as *USH Ventures* did not address this Court's ability to provide equitable relief.

Defendant counters that jurisdiction for DUFTA claim belongs in the Court of Chancery, asserting this Court cannot exercise "jurisdiction over a fraudulent transfer claim brought by motion against a non-party,"[34] or "undue a real estate transaction and change the purported priority of third-party mortgage holders."[35] Additionally, Defendant observes that the resolution of this matter is contingent on a pending Court of Chancery matter regarding "the issue of whether the New Castle County Sheriff properly seized the mortgage at issue."[36]

---

[31] 796 A.2d 7 (Del. Super. May 9, 2000).
[32] D.I. 369, p. 2, quoting *USH Ventures*, 796 A.2d at 14 (emphasis added).
[33] *USH Ventures,* 796 A.2d at 17-18.
[34] D.I. 369, ¶ 2.
[35] *Id*.
[36] *Id.*, ¶ 16.

9

The Court of Chancery's ability to fashion equitable relief for a DUFTA claim was discussed at length in *August v. August*[37] (a case previously prosecuted by Plaintiff's counsel). Therein, the court opined:

> The DUFTA provides remedies to creditors who are defrauded by debtors who transfer assets or incur obligations "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor," or, in certain circumstances, "[w]ithout receiving reasonably equivalent value." These remedies are broad and leave considerable space for the exercise of equitable discretion. In addition to specific remedies such as avoidance and attachment, the statute provides that, "[s]ubject to applicable principles of equity ... [a defrauded creditor may obtain] [a]ny other relief the circumstances may require."
>
> According to the committee that drafted the Uniform Act, its remedies are cumulative and non-exclusive. Moreover, our Supreme Court has recognized the "broad latitude" a court in equity has to craft a remedy appropriate to the circumstances of a fraudulent transfer.
>
> The overarching goal in applying these remedies is to put a creditor in the position she would have been in had the fraudulent transfer not occurred. This principle stems from the concept that the recipient of a fraudulent transfer holds the asset in constructive trust for creditors, and is reflected in § 1308 of the DUFTA, which allows a creditor to recover "an amount equal to the value of the asset at the time of the transfer, subject to the adjustment as the equities require" from a transferee.[38]

Where a party requests this Court retain jurisdiction and provide equitable relief, this Court is to consider the following factors: "the simplicity of the issue to be tried, the number of witnesses who can testify on the issue, the ability of the Court to shape an adequate and complete remedy, and the convenience of trying the cause

---

[37] *August v. August*, 2009 WL 458778 at *10 (Del. Ch. Feb. 20, 2009) (internal citations omitted).
[38] *Id.* at *10 (*see also Aloysius, Butler and Clark Associates, Inc. v. First National Retirement Systems, Inc.*, 1977 WL 2584 at *1 (Del. Ch. June 30, 1977) ("[E]quity has jurisdiction over a suit by a creditor to enforce liability on a transferee as a result of a transfer of assets by a transferor corporation which thereby defrauds a creditor of the latter.")).

in a court of law."[39]  Here, two factors weigh against jurisdiction in this Court: the complexity of unwinding a mortgage and Pledge Agreement, and the need for a court to fashion and implement an adequate and complete remedy.  Both factors compel this matter be transferred to the Court of Chancery.  Plaintiff has failed to specify the relief he seeks, and remedies at law appear inadequate.

"It has been held on more than one occasion that equity has jurisdiction over a suit by a creditor to enforce liability on a transferee as a result of a transfer of assets by a transferor corporation which thereby defrauds a creditor of the latter."[40]  If Plaintiff aims to compel Porter Road to return or forfeit "fraudulently conveyed property," the Court of Chancery will likely have jurisdiction – as Plaintiff's briefing suggests.[41]

Plaintiff bears the burden of establishing this Court has jurisdiction,[42] but he has not specified the remedy necessary to reverse Defendant's alleged fraudulent

---

[39] *John Julian Construct. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 35 (Del. Super. 1973)(internal citations omitted).  Plaintiff suggests these factors weigh in favor of keeping this matter in the Superior Court.  D.I. 368, p. 7.  To support its argument, Plaintiff relies on *Computer Sciences Corp. v. Sci-Tek, Inc.*, 367 A.2d 658, 661 (Del. Super. 1976) and *Delaware Health Corp. v. Grim*, 2014 WL 66666570, at *2-3 (Del. Super. Nov. 19, 2014).  In *Computer Sciences*, this Court rightly concluded it can exercise discretion and was competent to "adjudicate issues of fraud which may underly the effectiveness of its execution process," but the facts of *Computer Sciences Corp.* are not analogous here, and the remedy sought by Plaintiff here is opaque at best.  In *Delaware Health Corp.*, this Court rejected Plaintiff's claim that Chancery Court should exercise jurisdiction, concluding Plaintiff's claims were essentially breach of contract claims, and Plaintiff had adequate remedies at law.  *Del. Health Corp.*, 2014 WL 66666570, at *2-3.

[40] *Aloysius, Butler and Clark Associates*, 1977 WL 2584 at *1 (internal citations omitted).

[41] D.I. 368, p. 4, *citing Clark v. Teeven Hldg. Co.*, 625 A.2d 869, 878 (Del. Ch. 1992).

[42] *See Boatswain v. Miller*, 2023 WL 355487, at *2 (Del. Super. Jan. 23, 2023).

11

transaction. Returning to the Court of Chancery's opinion in *August v. August*, it appears the "broad latitude" of "equitable discretion" will be required to resolve this matter. This litigation's legal claim for monetary damages was resolved when this Court entered a default judgment in 2010. In this phase of the litigation, Plaintiff asserts an equitable claim which will require an equitable remedy, and jurisdiction lies in the Court of Chancery.[43]

---

[43] The Superior Court lacks "the jurisdictional authority to grant equitable relief." *Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at *10 (Del. Ch. Jan. 27, 2016)(citing *Ciappa Constr. Inc. v. Innovative Prop. Res., LLC.*, 2007 WL 914640, at *1 (Del. Super. Mar. 2, 2007).

**CONCLUSION**

For the aforestated reasons, Plaintiff's motion to hold Defendant in civil contempt is **DENIED**; Plaintiff's Motion for the Court to Order Remedies Under 6 *Del. C.* § 1307 for a Fraudulent Transfer by the Defendant Under 6 *Del. C.* § 1304 is also **DENIED** due to lack of jurisdiction.[44]

Because this Court lacks jurisdiction over the DUFTA claim, this claim is **DISMISSED**, subject to Plaintiff's right to file a written election in this Court to have the claim transferred to the Court of Chancery pursuant to 10 *Del. C.* § 1902. If Plaintiff fails to elect to transfer this claim within 60 days, it will be dismissed with prejudice.

**IT IS SO ORDERED,** this 20th day of June, 2025.

*/s/ Martin B. O'Connor*
Commissioner

Cc:  Prothonotary

---

[44] *Id.*

13